**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

RITA and PAM JERNIGAN; BECCA and                                  **PLAINTIFFS**
TARA AUSTIN
v.                                          **NO. 4:13-CV-410 KGB**

LARRY CRANE, In His Official Capacity As                          **DEFENDANTS**
Circuit And County Clerk For Pulaski
County, Arkansas And His Successors In
Interest; RICHARD WEISS, In His Official
Capacity As Director of the Arkansas
Department of Finance and Administration
And His Successors in Interest; GEORGE
HOPKINS, In His Official Capacity as
Executive Director of the Arkansas Teacher
Retirement System And His Successors In
Interest; and DUSTIN MCDANIEL, In His
Official Capacity As Attorney General For
The State Of Arkansas and His Successors in
Interest

<u>**BRIEF IN SUPPORT OF SEPARATE DEFENDANTS' MOTION TO DISMISS**</u>

Plaintiffs filed this suit against, *inter alia*, Arkansas Attorney General Dustin McDaniel,

Arkansas Department of Finance and Administrator Director Richard Weiss, and Arkansas

Teacher Retirement System Executive Director George Hopkins,[1] all in their official capacities.

Plaintiffs seek a declaration that Arkansas Constitution Amendment 83 regarding marriage,

along with Ark. Code Ark. Code Ann. § 9-11-107, Ark. Code Ann. § 9-11-109, and Ann. § 9-11-

208, violate the Fourteenth Amendment to the United States Constitution.  Plaintiffs also request

injunctive relief which would prohibit Arkansas from enforcing Amendment 83 and said statutes.

---

[1] Director Weiss and Executive Director Hopkins have not been served with a copy of the summons and Amended Complaint in this action.  Accordingly, in addition to the other grounds for dismissal set forth herein, all claims against Director Weiss and Executive Director Hopkins should be dismissed under Federal Rule of Civil Procedure 12(b)(5) for inadequate service of process.

A parallel action challenging the federal constitutionality of Arkansas Amendment 83, Ark. Code Ann. § 9-11-107, Ark. Code Ann. § 9-11-109, and Ann. § 9-11-208 was filed prior to the commencement of this action and is presently being litigated in an Arkansas state court action styled *M. Kendall Wright, et al. v. Nathaniel Smith, MD, MPH, et al.*, Pulaski County Circuit Court No. 60CV-13-2662.

For the reasons discussed herein, Plaintiffs' Amended Complaint should be dismissed.

## I.   ARKANSAS LAW ON MARRIAGE

### A.   Amendment 83.

At the general election held on November 2, 2004, Arkansas voters approved a constitutional amendment by a vote of 753,770 (74.95%) for, to 251,914 (25.05%) against, *see* www.sos.arkansas.gov/electionresults/index.php?elecid=66, which became Amendment 83 to the Arkansas Constitution.  Amendment 83 provides in full:

> § 1.  Marriage
>
> Marriage consists only of the union of one man and one woman.
>
> § 2.  Marital Status
>
> Legal status for unmarried persons which is identical or substantially similar to marital status shall not be valid or recognized in Arkansas, except that the legislature may recognize a common law marriage from another state between a man and a woman.
>
> § 3.  Capacity, rights, obligations, privileges and immunities
>
> The Legislature has the power to determine the capacity of persons to marry, subject to this amendment, and the legal rights, obligations, privileges, and immunities of marriage.

*Id.*

**B.      Ark. Code Ann. § 9-11-107, Ark. Code Ann. § 9-11-109, and Ann. § 9-11-208**

Ark. Code Ann. § 9-11-107 provides:

(a) All marriages contracted outside this state that would be valid by the laws of the state or country in which the marriages were consummated and in which the parties then actually resided shall be valid in all the courts in this state.

(b) This section shall not apply to a marriage between persons of the same sex.

*Id.*

Ark. Code Ann. § 9-11-109 provides, "Marriage shall be only between a man and a woman. A marriage between persons of the same sex is void." *Id.*

Ark. Code Ann. § 9-11-208 states:

(a)(1)(A) It is the public policy of the State of Arkansas to recognize the marital union only of man and woman.

(B) A license shall not be issued to a person to marry another person of the same sex, and no same-sex marriage shall be recognized as entitled to the benefits of marriage.

(2) Marriages between persons of the same sex are prohibited in this state. Any marriage entered into by a person of the same sex, when a marriage license is issued by another state or by a foreign jurisdiction, shall be void in Arkansas, and any contractual or other rights granted by virtue of that license, including its termination, shall be unenforceable in the Arkansas courts.

(3) However, nothing in this section shall prevent an employer from extending benefits to a person who is a domestic partner of an employee.

(b) A license shall not be issued to a person to marry unless and until the female shall attain the age of sixteen (16) years and the male the age of seventeen (17) years and then only by written consent by a parent or guardian until the male shall have attained the age of eighteen (18) years and the female the age of eighteen (18) years.

*Id.*

These Arkansas statutes mirror the laws of a majority of other states that likewise limit marriage to opposite-sex couples and frequently provide that state law does not recognize marriage between persons of the same sex, even if obtained in another jurisdiction that allows

3

same-sex marriage.[2]   Though a few state supreme courts have struck down laws prohibiting same-sex marriage under provisions of state constitutions,[3] the vast majority of these laws have stood unchallenged or have been upheld against challenges under state and federal law, by state and federal courts, and remain in effect today.

### C.   Plaintiffs' Claims Regarding Amendment 83, Ark. Code Ann. § 9-11-107, Ark. Code Ann. § 9-11-109, and Ann. § 9-11-208.

Plaintiffs, two (2) lesbian couples living in Arkansas ("Plaintiffs"), challenge the constitutionality of Amendment 83 to the Constitution of Arkansas, Ark. Code Ann. § 9-11-107, Ark. Code Ann. § 9-11-109, and Ann. § 9-11-208.  Plaintiffs allege that they are in long-term, committed relationships, and they have attempted to marry or have their marriage legally

---

[2] *See* Ala. Code § 30-1-19; Ala. Const. Art. I, § 36.03; Alaska Const. Art. I, § 25; Alaska Stat. §§ 25.05.011, 25.05.013; Ariz. Rev. Stat. Ann. §§ 25-101, 25-112, 25-125; Colo. Const. Art. II, § 31; Colo. Rev. Stat. Ann. § 14-2-104; Fla. Const. Art. I, § 27; Fla. Stat. Ann. § 741.212; Ga. Const. Art. I, § 4; Ga. Code Ann. § 19-3-3.1; Idaho Const. Art. III, § 28; Idaho Code §§ 32-201, 32-209; Ind. Code Ann. § 31-11-1-1; Kan. Const. Art XV, § 16; Kan. Stat. Ann. §§ 23-2501, 23-2508; Ky. Const. § 233A; Ky. Rev. Stat. Ann. §§ 402.005, 402.020, 402.040, 402.045; La. Const. Art. 12, § 15; La. Civ. Code Ann. Art. 86, 3520; La. Civ. Code art. 89; La. Rev. Stat. Ann. §§ 9:272, 9:273; Mich. Const. 1963, Art. I, § 25; Mich. Comp. Laws Ann. §§ 551.1 to 551.4, 551.271 to 551.272; Miss. Const., Art. 14 § 263A; Miss. Code Ann. §§ 93-1-1, 93-1-3; Mo. Const. Art I, § 33; Mo. Rev. Stat. § 451.022; Mont. Const. Art. XIII, § 7; Mont. Code Ann. §§ 40-1-103, 40-1-401; Neb. Const. Art. I, § 29; Neb. Stat. § 42-117; N.C. Const. Art. XIV, § 6; N.C. Gen. Stat. §§ 51-1, 51-1.2; N.D. Const. Art. XI, § 28; N.D. Cent. Code §§ 14-03-01, 14-03-08; Nev. Const. Art. I § 21; Nev. Rev. Stat. § 122.020; Or. Const. Art. 15, § 5a; 23 Pa. Cons. Stat. Ann. §§ 1102, 1704; S.C. Const. Art XVII, § 15; S.C. Code Ann. §§ 20-1-10, 20-1-15; S.D. Const. Art XXI, § 9; S.D. Codified Laws §§ 25-1-1, 25-1-38; Tenn. Const. Art. XI, § 18; Tenn. Code Ann. § 36-3-113; Tex. Const. Art. I, § 32; Tex. Fam. Code Ann. §§ 1.103, 2.001, 6.204; Va. Const. Art. I, § 15-A; Va. Code Ann. §§ 20-45.2 to 20-45.3; W. Va. Code Ann. §§ 48-2-104, 48-2-401, 48-2-603; Wis. Const. Art. XIII, § 13; Wis. Stat. §§ 765.01, 765.04, 765.001, 765.30(a); Wyo. Stat. Ann. §§ 20-1-101, 20-1-111.

[3] *See*, *e.g.*, *Varnum v. Brien*, 763 N.W.2d 862 (Iowa 2009); *Kerrigan v. Comm'r of Public Health*, 957 A.2d 407 (Conn. 2008); *Conaway v. Deane*, 932 A.2d 571 (Md. 2007), opinion extended after remand, 2008 WL 3999843 (2008); *Hernandez v. Robles*, 855 N.E.2d 1, 5 (N.Y. 2006); *Andersen v. King County*, 138 P.3d 963 (Wash. 2006); *Lewis v. Harris*, 908 A.2d 196 (N.J. 2006); *Goodridge v. Dep't of Public Health*, 798 N.E.2d 941 (Mass. 2003).

recognized in Arkansas but have been denied because same-sex marriage is prohibited in Arkansas under Amendment 83.

Plaintiffs contend that Amendment 83 and the referenced statutes violate their constitutionally protected rights to due process and equal protection (Amended Complaint, ¶ 9) under United States Constitution.  Plaintiffs request a declaration that Amendment 83 and the referenced statutes are unconstitutional and a permanent injunction barring enforcement of Amendment 83 and the referenced statutes.  (Amended Complaint, ¶ 9).

The United States Supreme Court has cautioned restraint in the recognition of new substantive constitutional rights not anchored in the text of the federal Constitution, s*ee* *Washington v. Glucksberg*, 521 U.S. 702 (1997), urging lower courts to exercise the utmost care "lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences" of a shifting court majority.  *Id*. at 720.  The Due Process Clause protects only those fundamental rights and liberties that are "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Id*. at 720-21.  As discussed in detail below, Plaintiffs' challenges to Amendment 83 and the referenced statutes fail under binding precedent of the United States Supreme Court and the United States Court of Appeals for the Eighth Circuit.  Accordingly, the Amended Complaint should be dismissed with prejudice for failure to state a claim upon which any relief can be granted.

## II.    DISMISSAL STANDARD

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Additionally, Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 677–78 (citation omitted). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.,* 524 F .3d 866, 870 (8th Cir. 2008) (citation omitted).

When ruling on a motion to dismiss, courts may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citation omitted).

### III.    PLAINTIFFS MAY NOT SEEK TO ENJOIN STATE OFFICIALS FROM ENFORCING STATE LAWS.

Plaintiffs seek to have this Court enjoin the State Defendants from enforcing the State's referenced marriage laws.  However, well-settled authority prohibits suits seeking such relief from State officials.

In *Massachusetts State Grange v. Benton*, 272 U.S. 525, 47 S.Ct. 189, 71 L.Ed. 387 (1926), the United States Supreme Court was asked to review a claim which sought to enjoin Massachusetts state officials – including its attorney general -- from enforcing the state's daylight savings act.  Finding that the complaint had properly been dismissed, the Supreme Court stated with emphasis, "[N]o injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury." *Id.* at 527, 47 S.Ct. at 190

"It has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the

internal affairs of a domestic corporation of the state." *Commonwealth of Pennsylvania v. Williams*, 294 U.S. 176, 55 S.Ct. 380 (1935) (citations omitted). "There are stronger reasons for adopting a like practice where the exercise of jurisdiction involves an unnecessary interference by injunction with the lawful action of state officers." *Id.* at 185 (citing *Matthews v. Rodgers*, 284 U.S. 521, 525, 52 S.Ct. 217, 76 L.Ed. 447 (1932).

> Caution and reluctance there must be in special measure where relief, if granted, is an interference by the process of injunction with the activities of state officers discharging in good faith their supposed official duties. In such circumstances this court has said that an injunction ought not to issue "unless in a case reasonably free from doubt." *Mass. State Grange v. Benton*, 272 U.S. 525, 527, 47 S.Ct. 189, 190, 71 L.Ed. 387. The rule has been characterized as an "important" one, to be "very strictly observed." 272 U.S. at pages 527, 529, 47 S.Ct. 189, 71 L.Ed. 387. *Compare Gilchrist v. Interborough Rapid Transit Co.*, 279 U.S. 159, 49 S.Ct. 282, 73 L.Ed. 652; *Cavanaugh v. Looney*, 248 U.S. 453, 456, 39 S.Ct. 142, 63 L.Ed. 354.

*Hawks v. Hamill*, 288 U.S. 52, 60, 53 S.Ct. 240, 243 (1933).

Plaintiffs in the present case are asking this Court to take the very action which the Supreme Court has emphatically cautioned against, namely, enjoining state executives from discharging their official duties in good faith. Further, it can hardly be said that this is a case "free from doubt," which would justify a departure from this long-standing practice of judicial restraint. As noted above, a number of states have marriage laws similar to those of Arkansas which remain in effect today, standing either unchallenged or judicially upheld. For this reason, Plaintiffs' Amended Complaint should be dismissed.

## IV.   THE *YOUNGER* ABSTENTION DOCTRINE MANDATES DISMISSAL OF THIS ACTION.

In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court delineated an abstention doctrine which bars federal courts from granting relief when a state court criminal proceeding which preceded the commencement of the federal action is ongoing. Application of

the *Younger* doctrine was later expanded to include abstention where parallel state court civil proceedings involving important state interests are pending. *See Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

"Under current *Younger v. Harris* doctrine, federal courts should abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions." *Tony Alamo Christian Ministries v. Selig, et al.*, 664 F.3d 1245, 1249 (8th Cir. 2011) (citing *Plouffe v. Ligon,* 606 F.3d 890, 894–95 (8th Cir. 2010)). "In such circumstances, principles of comity and federalism preclude federal actions seeking injunctive or declaratory relief." *Id.* (citing *Younger v. Harris,* 401 U.S. 37, 41 & n. 2 (1971)). "So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex*, *supra*, 457 U.S. at 435. When abstention under *Younger* is warranted, the court should dismiss – rather than stay – the federal lawsuit. *Hill v. Jeffries*, 2013 WL 5673566 (E.D.Ark. 2013) ("When *Younger* abstention applies in a case where only injunctive or equitable relief is sought, it is clear that the appropriate disposition is dismissal of the federal action."); *Night Clubs, Inc. v. City of Fort Smith,* 163 F.3d 475, 481 (8th Cir.1998); *Anderson v. Schultz,* 871 F.2d 762, 766 (8th Cir.1989); *Caldwell v. Camp*, 594 F.2d 705, 708 (8th Cir. 1979).

This case presents satisfies all of the factors warranting abstention pursuant to *Younger*. An ongoing state court lawsuit which was filed before commencement of the instant suit involves identical federal constitutional claims and seeks the same declaratory and injunctive relief. Vital state interests are undeniably involved in the state court suit, which challenges

Arkansas' marriage statutes and constitutional amendment regarding marriage.  *See Williams v. North Carolina*, 317 U.S. 287, 298 (1942) (marriage recognition central to state domestic relations laws); *Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 383-84 (1930) (domestic relations matters historically reserved to the states).  Specifically, Plaintiffs in the state suit are asking the Pulaski County Circuit Court to hold unconstitutional Amendment 83 and the same Arkansas marriage statutes challenged in the instant case and find that marriages between members of the same sex be permitted and recognized – precisely the same relief sought in this case.  Lastly, the state suit presents a full and fair opportunity to raise federal constitutional claims regarding the challenged laws and that is exactly what the plaintiffs in that suit are doing.  Plaintiffs in the state suit are asserting federal due process and equal protections claims with respect to Amendment 83 and the referenced marriage statutes, as are Plaintiffs in the instant suit.   There is no evidence or showing of bad faith, harassment, or other extraordinary circumstance that would make abstention inappropriate in this matter.

Moreover, abstention and dismissal are still warranted in the present suit, even in light of the Supreme Court's holding in *Sprint Communications, Inc. v. Jacobs*, 134 S.Ct. 584, 588 (2013), wherein the Court reiterated that *Younger* abstention has traditionally been applied in the context of three types of cases:  state criminal prosecutions, state civil enforcement actions, and actions in furtherance of a state court's ability to enforce its orders.  The holding in *Sprint* does not change the abstention applicable in the present case. The types of civil enforcement actions which are the Court has found appropriate for federal abstention include those "in aid of and closely related to criminal statutes," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371 (1979), enforcement of contempt proceedings, *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), and

actions vindicating "important state policies such as safeguarding the fiscal integrity of [state] programs," *Trainor v. Hernandez*, 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977).

The pending state case involves the vindication of important state policies, *i.e.*, those pertaining to marriage. *See Ex parte Burrus,* 136 U.S. 586, 593-94, 10 S.Ct. 850 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."). And, the litigation pending in Arkansas State court raises precisely the same federal constitutional claims against precisely the same Arkansas laws as raised in Plaintiffs' Amended Complaint in the present suit. Thus, this case is one where *Younger* abstention or dismissal remains appropriate in light of the United States Supreme Court's most recent elaboration of the abstention doctrine.

For these reasons, abstention under *Younger* would be appropriate and Plaintiffs' Amended Complaint should be dismissed.[4]

## V.   WEISS, HOPKINS, AND MCDANIEL ARE NOT PROPER DEFENDANTS.

Director Weiss, Executive Director Hopkins, and Attorney General McDaniel are not proper defendants in the present action, and all claims against them should be promptly dismissed.

While suits against a state seeking prospective injunctive relief only may in some instances be appropriate as a narrow exception to sovereign immunity, *see Ex parte Young,* 209 U.S. 123, 159–60 (1908), a state official may be sued to enjoin enforcement of an allegedly unconstitutional statute, only when "such officer . . . [has some] some connection with the

---

[4] "Where *Younger* abstention is otherwise appropriate, the district court generally must dismiss the action, not stay it pending final resolution of the state-court proceedings." *Tony Alamo Christian Ministries v. Selig,* 664 F.3d 1245, 1251 (8th Cir. 2012).

enforcement of the Act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* at 157.  Director Weiss, Executive Director Hopkins, and Attorney General McDaniel do not have any enforcement authority under either Amendment 83 or the challenged statutes.[5]  Thus, they have only been sued as nominal representatives of the State.  Where a state official is named merely as a device to bring suit against the State itself, the suit is barred.  In *Ex parte Young*, 209 U.S. 123, 157 (1908), the United States Supreme Court held that, although it might be convenient to name a governor, attorney general, or similar official in a lawsuit challenging the constitutionality of a state statute, absent enforcement authority over that law, such officials may not be sued to test its constitutionality. The Court explained:

---

[5]      The only allegation about Richard Weiss is contained in Paragraph 18 of the Amended Complaint:  "Defendant Richard Weiss is sued in his official capacity as Director of the Arkansas Department of Finance and Administration.  His office is created by Ark. Code Ann. § 25-8-101.  In his official capacity, he is responsible for accepting or refusing tax returns filed by Arkansas residents and non-residents.  Ark. Code Ann. § 25-8-102.  Amendment 83 prohibits same-sex couples married in other states from filing joint Arkansas tax returns.  Defendant Weiss and his successors are sued in their official capacity only."

The only allegation about George Hopkins is contained in Paragraph 19 of the Amended Complaint:  "Defendant George Hopkins is sued in his official capacity as Executive Director of the Arkansas Teacher Retirement System (ATRS).  His office is created by Ark. Code Ann. § 24-7-303(c).  As the organization's chief executive officer, he is responsible for enforcing rules created by the ATRS Board of Trustees including (1) withholding spousal benefits from the same-sex spouses who are legally married under the laws of jurisdictions that recognize same-sex marriage and (2) preventing same-sex spouses from receiving retirement benefits from ATRS in the event of recipients' deaths."

The only allegation about General McDaniel is contained in paragraph 20 of the Amended Complaint:  "Defendant Dustin McDaniel, is the Attorney General of the State of Arkansas and is sued in that capacity.  His office is created by Article 6, Section 1 of the Arkansas Constitution.  His duties include both enforcing the law and advising officials within the State of the requirements of the law, including Amendment 83 and the challenged statutes. He is specifically authorized by Arkansas law to 'maintain and defend the interests of the State in matters before . . . federal courts' and he is the 'legal representative of all state officers, boards, and commissioners in all litigation where the interests of the state are involved.'  Ark. Code Ann. § 25-16-703."

> In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. **If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes.** That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

*Ex parte Young, supra*, 209 U.S. at 157 (emphasis added) (quoting *Fitts v. McGhee*, 172 U.S. 516 (1899)).

Thus, a state official may not be sued under *Ex parte Young* when he or she lacks authority to enforce the challenged statute. "A nexus between the violation of federal law and the individual accused of violating that law requires more than simply a broad general obligation to prevent a violation; it requires an actual violation of federal law by that individual." *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1342-43 (Fed. Cir. 2006) (holding that patentees could not maintain suit against individual officials of the University of Arkansas for patent infringement based upon allegation that officials supervised intellectual property activity at the University due to their positions at the University) (citing cases). Claims based solely upon an official's high-ranking position, where the official does not enforce the statute in question, fail as a matter of law. *See L. A. County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.") (citing

cases); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) (holding the governor and attorney general of a state are not the proper defendants in every action attacking the constitutionality of a state statute merely because they have a general obligation to enforce state laws); *Young v. State of Hawaii*, Civ. No. 12-336-HG-BMK (D. Hawaii Nov. 29, 2012) (granting motion to dismiss state, governor, and attorney general where plaintiffs challenged state gun licensing laws; "Plaintiffs' claims against Governor Abercrombie and Attorney General Louie are based on their general oversight of Hawaii laws.  These allegations are insufficient to establish a nexus between the named State officials and the alleged violation of Plaintiff's constitutional rights.") (citing *Pennington Seed, Inc.*, *supra*; *L. A. County Bar Ass'n v. Eu*, *supra*).

Similarly, the fact that a state attorney general might be charged with representing the State or its agencies or officials in court does not authorize suit against the attorney general himself.  *See Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (attorney general's general supervisory powers are not sufficient "connection" to enforcement of statute); *Rode v. Dellarciprete*, 845 F.2d 1195, 1208-09 (3rd Cir. 1988) (attorney general's power to review and approve regulation for form and legality does not charge him with duty to enforce regulation and constitutes an insufficient connection with enforcement of regulations to permit him to be sued under Section 1983); *McCrimmon v. Daley,* 418 F.2d 366, 368 (7th Cir. 1969) (attorney general not properly a defendant because he was not charged with enforcement of the enabling legislation or the local ordinance); *Gras v. Stevens*, 415 F.Supp. 1148, 1151 (S.D.N.Y. 1976) (attorney general not properly a defendant even though he had duty to support the constitutionality of challenged state laws and defend actions in which the state was "interested."); *Blackwell v. Harrison*, 221 F.Supp. 651, 651-52 (E.D.Va. 1963) (challenge to statute requiring segregated accommodations in theaters; attorney

general had no "special relationship" to the controversy between plaintiffs and theater owner so as to make attorney general a proper party).

In the present case, there is simply no constitutional or statutory authority which grants the Director of the Department of Finance and Administration, the Executive Director of the Arkansas Teachers Retirement System, or the Attorney General any enforcement responsibilities with respect to Amendment 83 or the challenged statutes.  Thus, the suit against these Separate Defendants as nominal representatives of the State is barred under well-established law.

## VI.  PLAINTIFFS' CLAIMS FAIL ON THE MERITS.

### A.  Recent federal jurisprudence:  *Windsor* and *Perry*.

"By history and tradition the definition and regulation of marriage . . . has been treated as being within the authority and realm of the separate States."  *United States v. Windsor*, No. 12-1307, Slip Op., at 14 (U.S. June 26, 2013).  The United States Supreme Court has long maintained that a State "has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved." *Pennoyer v. Neff*, 95 U.S. 714, 734-735 (1878).  The Supreme Court recently affirmed this deeply rooted deference to state regulation of marriage:

> State laws defining and regulating marriage, of course, must respect the constitutional rights of persons, see, *e.g.*, *Loving v. Virginia*, 388 U.S. 1 (1967); but, subject to those guarantees, "**regulation of domestic relations is 'an area that has been regarded as a virtually exclusive province of the States**.' " *Sosna v. Iowa*, 419 U.S. 393, 404 (1975).
>
> **The recognition of civil marriages is central to state domestic relations law applicable to its residents and citizens**.  *See Williams v. North Carolina*, 317 U.S. 287, 298 (1942) ("Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders").  **The definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations** with respect to the

"[p]rotection of offspring, property interests, and the enforcement of marital responsibilities." *Ibid*. "[T]he states, at the time of the adoption of the Constitution, possessed full power over the subject of marriage and divorce." *Haddoch v. Haddoch*, 201 U.S. 562, 575 (1906); see also *In re Burrus*, 136 U.S. 586, 593-594 (1890) ("The whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.").

\*\*\*

**The significance of state responsibilities for the definition and regulation of marriage dates to the Nation's beginning; for "when the Constitution was adopted the common understanding was that the domestic relations of husband and wife and parent and child were matters reserved to the States."** *Ohio ex rel. Popovici v. Agler*, **280 U.S. 379, 383-384 (1930)). Marriage laws vary in some respects from State to State . . . [b]ut these rules are in every event consistent within each State.**

*Windsor*, *supra*, at 16-17 & 18 (*italics*, citations and quotations in original; **bold** emphasis added). "The responsibility of the States for the regulation of domestic relations is an important indicator of the substantial societal impact the State's classifications have in the daily lives and customs of its people." *Id*. at 20.

Thus, in *Windsor*, the Supreme Court struck down the federal Defense of Marriage Act, not because recognition of same-sex marriages is required by the federal Constitution, but rather because the federal government may not discriminate between opposite-sex and same-sex marriages if both are recognized under a state's law. The Court specifically declined to recognize same-sex marriage as a fundamental right under the federal Constitution, and declined to recognize homosexuality as a suspect classification for purposes of equal protection analysis. Rather, the Court concluded that federalism concerns undermined the rationality of a federal law that imposed a definition of marriage contrary to the definition in state law, and which did not treat all marriages authorized under that state's law as equal. *Id*. The *Windsor* majority did *not*

15

hold that states are constitutionally required to recognize same-sex marriage, but affirmed the traditional view that it is the province of individual states to choose which marriages will be recognized under state law.  Indeed, *none* of the Supreme Court Justices in *Windsor* – whether in the majority or in dissent – opined that states are constitutionally required to recognize same-sex marriage.[6]

Similarly, in *Hollingsworth v. Perry*, No. 12-144, Slip Op. (U.S. June 26, 2012), a 5-4 majority opinion delivered by Chief Justice Roberts and joined by Justices Scalia, Ginsburg, Breyer and Kagan, declined to hold that states are constitutionally compelled to recognize same-sex marriage.  The plaintiffs in *Perry* challenged California's Proposition 8 under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 1004 (N.D. Cal. 2010).  Following a 12-day bench trial, the district court declared Proposition 8 unconstitutional.  *Id.*  The Ninth Circuit Court of Appeals affirmed the district court on the merits.  *Hollingsworth v. Perry*, *supra*, at 3-5.

On certiorari to the United States Supreme Court, the Court majority declined to address the question "whether the Equal Protection Clause 'prohibits the State of California from defining marriage as the union of a man and woman[,]'" *id.* at 1, finding that because the petitioners lacked standing, the Court had no authority to decide the case on the merits.  *Id.* at 2. Though the Supreme Court was presented with a constitutional challenge to a state constitutional amendment restricting marriage to opposite-sex couples, the Court declined to address the constitutionality of California's Proposition 8.  *Id.*  As in *Windsor*, *supra*, none of the Supreme

---

[6] The four dissenting Justices filed three dissents.  Chief Justice Roberts, Justice Alito, and Justice Scalia joined by Justice Thomas would have upheld the federal Defense of Marriage Act.  Presumably, by the same rationale, the four dissenters in *Windsor* would likewise uphold Arkansas Amendment 83 and similar state laws in the majority of states.

Court Justices in *Perry* opined that states are constitutionally required to recognize same-sex marriage, despite the fact that the Court was presented with an appeal of that very issue.

> B.   **Plaintiffs' federal due process and equal protection claims fail as a matter of well-established law.**

Plaintiffs' federal due process and equal protection claims, along with their gender and sexual orientation claims, fail on the merits under established federal law.  In *Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971), *appeal dismissed*, 409 U.S. 810 (1972), the Minnesota Supreme Court held that a state statute that defined marriage as a union between persons of the opposite sex did not violate the First, Eighth, Ninth, or Fourteenth Amendments of the United States Constitution.  The Minnesota Supreme Court rejected the plaintiffs' claims, determining that a right to marry without regard to the sex of the parties is not a fundamental right.  191 N.W.2d at 186-187.  The court further determined that the Equal Protection Clause was "not offended by the state's classification of persons authorized to marry" and that there was "no irrational or invidious discrimination." *Id.* at 187.

The United States Supreme Court summarily dismissed the *Baker* case "for want of a substantial federal question," *Baker*, 409 U.S. 810, where the petitioners had presented the following three questions:

> (1) Whether [Minnesota's] refusal to sanctify appellants' marriage deprives appellants of their liberty to marry and of their property without due process of law under the Fourteenth Amendment.

> (2) Whether [Minnesota's] refusal, pursuant to Minnesota marriage statutes, to sanctify appellants' marriage because both are of the male sex violates their rights under the equal protection clause of the Fourteenth Amendment.

> (3) Whether [Minnesota's] refusal to sanctify appellants' marriage deprives appellants of their right to privacy under the Ninth and Fourteenth Amendments.

*Jackson v. Abercrombie*, 884 F.Supp.2d 1065, 1085 (Haw. 2012).

Under well-established law, where a case is dismissed for want of a substantial federal question, that dismissal is considered by the Supreme Court -- and must be treated by the federal courts -- as an adjudication on the merits of the federal claims raised. Such a dismissal means that the federal claims asserted are not well-founded under the United States Constitution. As the Supreme Court has long held, where the Court has jurisdiction over a federal case, dismissal of the case for want of a substantial federal question stands as a "rejection [on the merits] of the specific challenges presented in the statement of jurisdiction." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977). *See also, Hicks v. Miranda*, 422 U.S. 332, 344 (1975).

"The Supreme Court has not explicitly or implicitly overturned its holding in *Baker* or provided the lower courts with any reason to believe that the holding is invalid." *Id.* (Citing *Perry v. Schwarzenegger*, 628 F.3d 1191, 1099 n.1 (9th Cir. 2011) (N. R. Smith, J., concurring in part and dissenting in part) (vacated by the Supreme Court in *Perry*, *supra*) (concluding that the Supreme Court cases following *Baker* do not suggest any doctrinal developments indicating *Baker* is no longer good law); *Wilson v. Ake*, 354 F.Supp.2d 1298, 1305-06 (M.D. Fla. 2005) (same)). *See also Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (summary dismissals by the Court "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions."); *Hicks v. Miranda*, 422 U.S. 332, 344 & 345 n. 14 (1975) (summary dismissals by the Court constitute a ruling on the merits by the Court; "unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to

the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise[.]").

Numerous courts have concluded that *Baker* is binding precedent that requires dismissal of due process, equal protection, and privacy claims brought against any state law codifying the traditional definition of marriage.  *See*, *e.g.*, *Anderson v. King*, 138 P.3d 963, 969 (Wash. 2006) (citing to *Baker* and holding "the same-sex union as a constitutional right argument was so frivolous as to merit dismissal without further argument by the Supreme Court.  A similar result is required today."); *Morrison v. Sadler*, 821 N.E.2d 15, 19 (Ind. App. 2005) (citing to *Baker* and stating: "There is binding United States Supreme Court precedent indicating that state bans on same-sex marriage do not violate the United States Constitution."); *Wilson v. Ake*, *supra*, 354 F.Supp.2d at 1305 ("*Baker v. Nelson* is binding precedent upon this Court"); *but see In re Kandu*, 315 B.R. 123, 138 (W.D. Wash. 2004); *In re J.B.*, 326 S.W.3d 654, 672 (Tex. App. Dallas 2010).  As other courts have done, *supra*, this Court should dismiss Plaintiffs' federal due process and equal protection claims under *Baker* alone.

In *Lawrence v. Texas*, 539 U.S. 558, 578 (2003), in which the Supreme Court invalidated a state law criminalizing sodomy, the majority was careful to note that the Texas statute at issue "does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter."  *Id*.  In the recent decisions of *Windsor* and *Perry*, the Court again specifically declined to hold that a state law limiting marriage to opposite-sex couples violates the federal due process, equal protection, or privacy rights of same-sex couples who cannot marry under such a state law.  Indeed, the Court explicitly stated that the regulation of marriage was primarily a matter of state concern to be governed by state law.  In sum, the Supreme Court has consistently and repeatedly declined to recognize a fundamental

constitutional due process, equal protection, or privacy right of the type advocated by Plaintiffs in this case.

In addition, the Eighth Circuit Court of Appeals has specifically held that an equal protection challenge to Nebraska's marriage laws fails on the merits. *See Citizens for Equal Protection, Inc. v. Bruning*, 455 F.3d 859 (8th Cir. 2006) (upholding a state constitutional amendment providing that "Only marriage between a man and a woman shall be valid or recognized in Nebraska. The uniting of two persons of the same sex in a civil union, domestic partnership, or other similar same-sex relationship shall not be valid or recognized in Nebraska."). In *Bruning*, the Eighth Circuit squarely addressed the constitutionality of a substantively identical state constitutional amendment, and specifically held that the "[plaintiffs'] equal protection argument fails on the merits." 455 F.3d at 864-69.[7] The Eighth Circuit noted that sexual orientation is not a suspect classification for purposes of equal protection analysis, and rational basis review applies to a state law defining marriage. *Id*. (citing *Romer v. Evans*, 517 U.S. 620 (1996)). The Eighth Circuit emphasized that "[w]hatever our personal views regarding this political and sociological debate, we cannot conclude that the State's justification 'lacks a rational relationship to legitimate state interests.'" *Id*. at 868 (citing *Romer v. Evans*, *supra*, 517 U.S. at 632). In conclusion, the Eighth Circuit noted: "In the nearly one hundred and fifty years since the Fourteenth Amendment was adopted, to our knowledge no Justice of the Supreme Court has suggested that a state statute or constitutional provision codifying the traditional definition of marriage violates the Equal Protection Clause or any other provision of the United States Constitution." *Id*. at 870. The Eighth Circuit's holding in *Bruning* requires

---

[7] The *Bruning* court also determined that the state marriage amendment did not violate the federal Bill of Attainder Clause (*id*. at 869), and did not violate the plaintiffs' right to associational freedom protected by the federal First Amendment (*id*. at 870).

dismissal of Plaintiffs' federal claims for failure to state a claim upon which relief can be granted.

Like the Eighth Circuit in *Bruning*, other federal courts of appeals and district courts have concluded that state laws codifying the traditional definition of marriage are constitutional. *See*, *e.g.*, *Irizarry v. Bd. of Education of Chicago*, 251 F.3d 604, 607 (7th Cir. 2001); *Jackson v. Abercrombie*, *supra*, 884 F.Supp.2d at 1071 ("The United States Supreme Court has never held that heightened scrutiny applies to classifications based upon sexual orientation and every circuit that has addressed the issue, *i.e.*, all circuits but the Second and Third Circuits, have unanimously declined to treat sexual orientation classifications as suspect") (citing *Romer v. Evans*, *supra*, 517 U.S. 620 at n. 25 (applying rational basis review to a classification based upon sexual orientation and collecting cases)).

Plaintiffs' federal constitutional claims are barred in the Eighth Circuit by *Bruning*, *supra*, and barred nationwide by *Baker*, *supra*, and the Supreme Court's refusal to overturn its holding in *Baker* despite ample opportunity in *Lawrence*, *Perry*, *Windsor*, and other cases, *supra*. Plaintiffs' federal constitutional claims should be dismissed.

### VII.  AMENDMENT 83 AND THE CHALLENGED STATUTES DO NOT VIOLATE PLAINTIFFS' FOURTEENTH AMENDMENT AUTONOMY, FAMILY PRIVACY, OR ASSOCIATION RIGHTS

Plaintiffs claim that Amendment 83 and the three challenged statutes violate their Fourteenth Amendment right to autonomy, family privacy, and association.

"State laws defining and regulating marriage, of course, must respect the constitutional rights of persons, *see, e.g., Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); but, subject to those guarantees, 'regulation of domestic relations' is 'an area that has long been regarded as a virtually exclusive province of the States.'" *U.S. v. Windsor*, 133 S. Ct.

2675, 2691 (2013) (citing *Sosna v. Iowa,* 419 U.S. 393, 404, 95 S.Ct. 553, 42 L.Ed.2d 532

(1975)).  The Court elaborated:

> The recognition of civil marriages is central to state domestic relations law applicable to its residents and citizens. *See Williams v. North Carolina,* 317 U.S. 287, 298, 63 S.Ct. 207, 87 L.Ed. 279 (1942) ("Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders"). The definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations with respect to the "[p]rotection of offspring, property interests, and the enforcement of marital responsibilities." *Ibid.* "[T]he states, at the time of the adoption of the Constitution, possessed full power over the subject of marriage and divorce ... [and] the Constitution delegated no authority to the Government of the United States on the subject of marriage and divorce." *Haddock v. Haddock,* 201 U.S. 562, 575, 26 S.Ct. 525, 50 L.Ed. 867 (1906); *see also In re Burrus,* 136 U.S. 586, 593–594, 10 S.Ct. 850, 34 L.Ed. 500 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States").

*Id.*

Thus, the *Windsor* Court acknowledged that a state's recognition of same-sex marriages

may be a proper exercise of its sovereign authority, *Windsor, supra*, 133 S.Ct. 2692, but it

certainly did not hold that the Constitution *compels* states to offer such recognition.  In finding

that New York's recognition of same-sex marriages was the state's way of offering such

relationships "further protection and dignity," *id.*, the *Windsor* Court did not find that the

Constitution requires states to enact such laws as a constitutional floor. Indeed, the Court has

never held that Fourteenth Amendment privacy rights mandate such recognition.  *See Lawrence*

*v. Texas*, 539 U.S. 558, (2003) (finding no legitimate state interest in a law that criminalized

sodomy between consenting adults, noting that the statute in question did *not* involve "whether

the government must give formal recognition to any relationship that homosexual persons seek

to enter")

In summary, Arkansas's marriage laws do not intrude into the private lives of Plaintiffs

or others committed to same-sex relationships.  The marriage laws at issue do not attempt to

criminalize private sexual conduct or otherwise intrude into the private and personal affairs of mutually-consenting adults.  What the Plaintiffs are asking is that the State be mandated to give formal recognition to a relationship that same sex couples seek to enter.  Prevailing case law does not compel this result.  For these reasons, Plaintiffs' privacy and association claims should be dismissed.

### VIII.   AMENDMENT 83 AND THE CHALLENGED STATUTES MEET THE RATIONAL-BASIS TEST.

The right to marry someone of the same sex is not "objectively, deeply rooted in this Nation's history and tradition" and thus is not a fundamental right.  *Washington v. Glucksberg*, *supra*, 521 U.S. at 720-21.  The Supreme Court has cautioned that "[b]y extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action."  *Id.*, 521 U.S. at 720.  "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citing *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225-226 (1985)).  Thus, "[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field."  *Id.*  As explained above, the United States Supreme Court has not broken new ground or declared a fundamental right applicable to the claims levied by Plaintiffs in this case.  Amendment 83 is therefore subject to rational-basis review under the United States Constitution.  *See Citizens for Equal Protection v. Bruning*, *supra*, 455 F.3d at 866-67 (citing *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 441 (1985) ("The Court's general standard is that rational-basis review applies 'where individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement.'")).

> "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational-basis for the classification." *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Thus, the classification created by § 29 and other laws defining marriage as the union between one man and one woman is afforded a "strong presumption of validity." *Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). The Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of [the voters'] choices." *Beach Communications,* 508 U.S. at 313, 113 S.Ct. 2096.

*Id.* at 867.

Under rational-basis review, a law is presumed constitutional and "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (internal quotations omitted). A court conducting a rational-basis review does not sit "as a superlegislature to judge the wisdom or desirability of legislative policy determinations," but only asks whether there is some conceivable rational basis for the challenged statute. *Id.* at 319.

In enacting Amendment 83, the citizens of Arkansas had "absolutely no obligation to select the scheme" that a court might later conclude was best. *Nat'l R.R. Passenger Corp. v. A.T.& S.F.R. Co.*, 470 U.S. 451, 477 (1985). "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Okla.*, 348 U.S. 483, 487-88 (1955). Amendment 83 does not have to be perfect in order to be constitutional. *See McGowan v. Maryland*, 366 U.S. 420, 425-426 (1961) ("State legislatures are presumed to have acted within their constitutional power despite the fact that in practice, their laws result in some inequality."). The presumption that a law is constitutional even though it may be imperfect is even stronger with regard to laws

passed by the citizens themselves at the ballot box.  *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (upholding an initiated act approved by California voters).

Beginning its rational-basis review with the acknowledgement of the fact that "the institution of marriage has always been, in our federal system, the predominant concern of state government," the Eighth Circuit in *Bruning* noted that the State's argument in support of its marriage laws, namely "[b]y affording legal recognition and a basket of rights and benefits to married heterosexual couples, such laws "encourage procreation to take place within the socially recognized unit that is best situated for raising children." *Id*. at 867.

> The State and its supporting amici cite a host of judicial decisions and secondary authorities recognizing and upholding this rationale. The argument is based in part on the traditional notion that two committed heterosexuals are the optimal partnership for raising children, which modern-day homosexual parents understandably decry. But it is also based on a "responsible procreation" theory that justifies conferring the inducements of marital recognition and benefits on opposite-sex couples, who can otherwise produce children by accident, but not on same-sex couples, who cannot.

*Id*. (citations omitted).

The Court concluded, "Whatever our personal views regarding this political and sociological debate, we cannot conclude that the State's justification "'lacks a rational relationship to legitimate state interests.'" *Id*. at 867-68 (citing *Romer v. Evans,* 517 U.S. 620, 632 (1996)).

> "Even if the classification ... is to some extent both underinclusive and overinclusive, and hence the line drawn ... imperfect, it is nevertheless the rule that ... perfection is by no means required." *Vance v. Bradley,* 440 U.S. 93, 108, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). Legislatures are permitted to use generalizations so long as "the question is at least debatable." *Heller,* 509 U.S. at 326, 113 S.Ct. 2637 (quotation omitted).  The package of government benefits and restrictions that accompany the institution of formal marriage serve a variety of other purposes. The legislature-or the people through the initiative process-may rationally choose not to expand in wholesale fashion the groups entitled to those benefits. "We accept such imperfection because it is in turn rationally related to

the secondary objective of legislative convenience." *Vance,* 440 U.S. at 109, 99 S.Ct. 939.

*Id.* at 868.

The citizens of Arkansas amended the State Constitution to include a particular definition of marriage.   As the Eighth Circuit, and numerous other courts have held, "there is no fundamental right to be free of the political barrier a validly enacted constitutional amendment erects."  *Citizens for Equal Protection v. Bruning*, *supra*, 455 F.3d at 868.

> Nationwide, citizens are engaged in a robust debate over this divisive social issue.  If the traditional institution of marriage is to be restructured, as sought by Plaintiffs, it should be done by a democratically-elected legislature or the people through a constitutional amendment, not through judicial legislation that would inappropriately preempt democratic deliberation regarding whether or not to authorize same-sex marriage.

*Jackson v. Abercrombie,* supra, 884 F.Supp.2d at 1072.  As these other courts have noted, the relief requested in this case does not lie with the judicial branch, but in the democratic process. [8]

Because Amendment 83 and the related marriage statutes easily satisfy the rational-basis test, Plaintiffs' Amended Complaint should be dismissed for failure to state a claim upon which any relief can be granted.

---

[8] To this end, there are two petition drives underway in Arkansas aimed at repealing Amendment 83.   *See* www.arequality.org/ballot-initiative/ ("The Arkansas Initiative for Marriage Equality is a citizen-led effort to bring marriage equality to the Natural State in 2016 through a proposed initiated amendment to the Arkansas State Constitution."); www.arkansansforequality.org/about/index.html ("We are a non-profit organization supporting equality for all Arkansans.  We are currently focused on repealing Amendment 83 of the Arkansas Constitution which defines marriage as only being between one man and one woman.").

IX.   **THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE RIGHT TO INTERSTATE TRAVEL AS A MATTER OF LAW.**

Plaintiffs' assertion that Amendment 83 and the challenged statutes violate their constitutionally protected right to interstate travel (Amended Complaint, ¶¶ 56 – 62) fails to state a claim for which relief can be granted and should be dismissed accordingly.   Plaintiffs assert that the right to interstate travel is derived from the Due Process Clause of the Fourteenth Amendment.   *See* Amended Complaint, ¶ 60 ("Defendants, acting under color of state law, are depriving Plaintiffs of the right to travel, a right secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution").   Because Plaintiffs rely on the federal constitution for their right to travel claim, the claim is barred in the Eighth Circuit by *Bruning*, and barred nationwide under *Baker* and subsequent United States Supreme Court cases that have declined to overrule *Baker*, including *Lawrence*, *Perry*, and *Windsor*, *supra*.   Plaintiffs' interstate travel claim should be dismissed without further inquiry.

Additionally, even without the binding precedent of *Baker* and *Bruning*, when Plaintiffs' interstate travel claim is analyzed as a separate and distinct claim from Plaintiffs' other constitutional claims, the interstate travel claim fails under well-established law.   The word "travel" is not found in the text of the Constitution.   "Yet the 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence."   *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (quoting *U.S. v. Guest*, 383 U.S. 745, 757 (1966)).   The constitutional right to travel embraces three different components:   (1) the right of a citizen of one State to enter and to leave another State; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State; and (3) the right to be treated like a permanent resident, for those travelers who elect to become permanent residents of the second State.   *Id*., 526 U.S. at

500.  Amendment 83 and Act 144 of 1997 do not violate, or even burden, any of these three components of the right to travel.

The first component of the right to travel, the right to move from state to state, is affected only when a statute directly impairs the exercise of the right to free interstate movement by imposing some obstacle on travelers.  *Saenz*, 526 U.S. at 500-501.  For example, in *Edwards v. Cal.*, 314 U.S. 160 (1941), the Court invalidated California's "anti-Okie" law that made it a crime to bring an indigent person into California.  *Id.*  Here, Plaintiffs do not allege that Amendment 83 imposes any actual obstacle on travelers into Arkansas.  Plaintiffs, of course, are Arkansas residents, not travelers.  The first component of the right to travel is not implicated in this case.  The second component of the right to travel, the right to be temporarily present in a second state, is also not implicated here, for the same reasons.

The third component of the right to travel has been characterized by the Supreme Court as "the right of the newly arrived citizen to the same privileges and immunities enjoyed by other citizens of the same State."  *Saenz*, 526 U.S. at 502.  In this case, Plaintiffs' interstate travel claim appears to be of the third variety, as Plaintiffs assert that Arkansas law's refusal to recognize their marriages from other jurisdictions infringes their right to travel when Plaintiffs choose "to make a home in Arkansas."  Amended Complaint, ¶ 58.  Of course, Amendment 83 and the challenged statutes make no distinction between or among citizens of Arkansas based upon the length of their citizenship or residency in Arkansas.  No resident of Arkansas, whether they have been a resident of Arkansas for a single day or for decades, may lawfully marry a person of the same sex under Arkansas law.  Arkansas law does not recognize any same-sex marriage obtained by an Arkansas resident in another jurisdiction, whether the Arkansas resident has been a resident of Arkansas for a single day, or for decades.  Simply put, Arkansas marriage

28

law treats all citizens of Arkansas exactly the same, regardless of whether they previously lived in another state, regardless of the length of their residence in Arkansas, and regardless of whether they have married in another jurisdiction. Because Arkansas marriage law does not treat any citizen any differently on the basis of their residence, the length of their residence, their former residence elsewhere, or their interstate travel (or lack thereof), there can be no violation of the constitutionally protected right to interstate travel.

A similar argument was considered by the Supreme Court in *Califano v. Torres*, 435 U.S. 1 (1978). In *Torres*, the plaintiff received Supplemental Security Income (SSI) benefits while residing in Connecticut. 435 U.S. at 2. When the plaintiff moved to Puerto Rico, his benefits were terminated because residents of Puerto Rico were not eligible for the benefits. *Id*. at 2-3.[9] The plaintiff claimed that the termination of his SSI benefits unconstitutionally burdened his right to interstate travel. *Id*. at 3. The Court rejected the plaintiff's argument, which it summarized as follows: "a person who travels to Puerto Rico must be given benefits superior to those enjoyed by other residents of Puerto Rico if the newcomer enjoyed those benefits in the State from which he came." *Id*. at 4. The Court concluded that the plaintiff's argument "altogether transposed" the right to travel – which only requires that new residents of a state be given the same benefits as other residents of the state. *Id*. The Court summarized the reasoning for this rule as follows:

> This Court has never held that the constitutional right to travel embraces any such doctrine, and we decline to do so now. Such a doctrine would apply with equal force to any benefits a State might provide for its residents . . . **And the broader implications of**

---

[9] While Puerto Rico is not a state, the Court specifically noted that its unique relationship to the United States was irrelevant for the purposes of the right to interstate travel: "[f]or purposes of this opinion we may assume that there is a virtually unqualified right to travel between Puerto Rico and any of the 50 States of the Union." *Torres*, 435 U.S. at 4 n. 6. Therefore, for purposes of its opinion in *Torres*, the Court treated Puerto Rico as if it was a state.

> **such a doctrine in other areas of substantive law would bid fair to destroy the independent power of each State under our Constitution to enact laws uniformly applicable to all of its residents.**

*Id.* at 4-5 (emphasis added).  *See also Schatz v. Interfaith Care Center*, 811 N.W.2d 643, 656 (Minn. 2012) ("Applying *Torres*, we conclude that Schatz's argument that she is entitled to more workers' compensation benefits than other Wyoming residents because she would have received those benefits in Minnesota lacks merit.  Like the plaintiff in *Torres*, Schatz seeks to transpose the right to travel into a right to provide a newcomer with the same benefits enjoyed in a previous state of residence.  But the right to travel does not, and has never been construed to, require a state to provide a new resident with the same benefits that the new resident received in her former state."); *Matsuo v. U.S.*, 532 F.Supp.2d 1238, 1250 (D. Haw. 2008) ("For those federal employees who have exercised their right to travel to Hawaii or Alaska, or were deterred by FEPCA from doing so, the Supreme Court expressly has rejected the proposition that the right to interstate travel includes the right to receive the same level of benefits in the citizen's new state as the citizen enjoyed in the former state of residence."); *Bess v. Bracken County Fiscal Court*, 210 S.W.3d 177, 183 (Ky. App. 2006) ("The constitutional right to travel does not require that when traveling to another jurisdiction, a person must be given benefits which are superior to those enjoyed by the jurisdiction's own residents simply because the traveler enjoyed those benefits in another place.").

Amendment 83 and the challenged statutes make no distinction between new residents and other residents of Arkansas; all residents including Plaintiffs are treated exactly the same. Plaintiffs' assertion that their right to travel is violated because Arkansas fails to recognize marriages Plaintiffs obtained in other states would "altogether transpose" the right to travel in

direct conflict with binding Supreme Court precedent.  Accordingly, Plaintiffs' interstate travel claim must be dismissed as a matter of law.

### X.  SUMMARY

The previously filed and ongoing state court litigation of precisely the same federal constitutional challenges to precisely the same Arkansas laws, strongly favors federal court abstention here under the *Younger* doctrine.  Furthermore, Director Richard Weiss, Executive Director Georg Hopkins, and Attorney General Dustin McDaniel are not proper parties to this suit –because none have authority to enforce Amendment 83 or the challenged statutes.

The merits of Plaintiffs' claims warrant dismissal as well.  Limiting marriage to couples of the opposite sex does not run afoul of any controlling precedent.  The right to marry someone of the same sex is not a recognized fundamental right and legislation against such marriages do not establish suspect classifications.  As such, the constitutionality of the challenged laws should be upheld, if there are any reasonably conceivable state of facts that could provide a rational basis for said laws.  Moreover, there is no controlling precedent which holds that failure of a state to give formal recognition to same-sex marriages violates privacy or association rights.  Since the Eighth Circuit has already upheld identical laws using the rational-basis test, Plaintiffs' Amended Complaint should be dismissed for failing to state a claim.

By:     /s/ Nga Mahfouz
        Nga Mahfouz     AR Bar No. 96149
        Assistant Attorney General
        323 Center Street, Suite 200
        Little Rock, Arkansas 72201
        Telephone: (501) 682-5311
        Facsimile:  (501) 682-2591
        E-mail:  nga.mahfouz@arkansasag.gov

        *Attorney for Director Richard Weiss,*
        *Executive Director George Hopkins, and*
        *Attorney General Dustin McDaniel*

## CERTIFICATE OF SERVICE

I, Nga Mahfouz, Assistant Attorney General, do hereby certify that on January 31, 2014, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system.

        /s/ Nga Mahfouz
        Nga Mahfouz     AR Bar No. 96149