## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**RITA AND PAM JERNIGAN AND**
**BECCA AND TARA AUSTIN**                                                **PLAINTIFFS**

**v.**

**LARRY CRANE, In His Official Capacity**
**As Circuit And County Clerk For Pulaski County**
**And His Successors In Interest; RICHARD WEISS,**
**In His Official Capacity As Director Of The Arkansas**
**Department Of Finance And Administration,**
**And His Successors In Interest; GEORGE HOPKINS,**
**In His Official Capacity As Executive Director Of**
**The Arkansas Teacher Retirement System And His**
**Successors In Interest; DUSTIN McDANIEL, In His**
**Official Capacity As Attorney General For The State**
**Of Arkansas And His Successors In Interest**                    **DEFENDANTS**

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................3

     A.    Arkansas Marriage Laws .............................................................4

     B.    *Windsor* and Its Progeny ...........................................................7

II.    LEGAL STANDARD .......................................................................11

III.   ARKANSAS'S MARRIAGE BANS AND ANTI-RECOGNITION LAWS
      VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS ......................12

     A.    Arkansas's Marriage Laws Violate Plaintiffs' Due Process Rights ...............12

           1.    *Fundamental Right to Marry* ...............................................13

           2.    *Right to Travel*........................................................16

     B.    Arkansas's Marriage Laws Deny Same-Sex Couples Equal Protection Of The
         Laws ..................................................................................17

           1.    *Discrimination Based on Sexual Orientation* .........................17

           2.    *Discrimination Based on Gender* ........................................19

IV.   ARKANSAS'S MARRIAGE BANS AND ANTI-RECOGNITION LAWS ARE
      UNCONSTITUTIONAL UNDER ANY STANDARD OF REVIEW ........................20

     A.    Protecting the "Traditional" Notion of Marriage is not a Rational Basis for
         the Marriage Ban or Anti-Recognition Laws.................................23

     B.    Encouraging Procreation is not a Rational Basis for the Marriage Bans or
         Anti-Recognition Laws .........................................................23

     C.    The Anti-Recognition Laws and Marriage Bans do not Promote Stability,
         Uniformity, or Continuity of the Laws During an Ongoing Debate About
         Marriage ..........................................................................25

     D.    The Fact that Arkansas Adopted Amendment 83 by Ballot Measure Does not
         Immunize Amendment 83 from Constitutional Scrutiny.......................26

V.    *BAKER v. NELSON* AND *CITIZENS FOR EQUAL PROTECTION, INC. v.
     BRUNING* DO NOT CONTROL THIS CASE ................................26

     A.    *Baker v. Nelson* ..............................................................27

     B.    *Citizens for Equal Protection, Inc. v. Bruning* ..........................29

VI.   CONCLUSION ..............................................................................31

## <u>TABLE OF AUTHORITIES</u>

### SUPREME COURT OF THE UNITED STATES

*Anderson v. Celebrezze,*
   460 U.S. 780 (1983) ................................................................................... 27

*Attorney Gen. of New York v. Soto-Lopez,*
   476 U.S. 898, 903 (1986) ............................................................................ 16

*Baker v. Nelson*,
   409 U.S. 810 (1972) ............................................................................. passim

*Bowen v. Gilliard*,
   483 U.S. 587 (1987) ................................................................................... 19

*Bowers v. Hardwick,*
   478 U.S. 186 (1986) ..................................................................................... 2

*City of Cleburne v. Cleburne Living Ctr.,*
   473 U.S. 432 (1985) ...................................................................... 19, 21, 25

*Cleveland Bd. Of Educ. v. LaFluer,*
   414 U.S. 632 (1974) ................................................................................... 13

*Edelman v. Jordan,*
   415 U.S. 651 (1974) ................................................................................... 27

*Griswold v. Connecticut,*
   381 U.S. 479 (1965) ...................................................................... 13, 14, 24

*Heller v. Doe,*
   509 U.S. 312 (1993) ...................................................................... 22, 24, 25

*Hicks v. Miranda*,
   422 U.S. 332 (1975) ................................................................................... 28

*Hollingsworth v. Perry,*
   133 S. Ct. 2652 (2013) ............................................................................... 28

*J.E.B. v. Alabama,*
   511 U.S. 127 (1994) ................................................................................... 20

*Lawrence v. Texas,*
   539 U.S. 558 (2003) ............................................................................. passim

*Lehr v. Robertson*,
   463 U.S. 248 (1983) ................................................................................ 13

*Loving v. Virginia*,
   388 U.S. 1 (1967) ............................................................................ passim

*M.L.B. v. S.L.J.*,
   519 U.S. 102 (1996) .................................................................................. 4

*Marbury v. Madison*,
   5 U.S. 137 (1803) .................................................................................... 26

*Matthews v. De Castro*,
   429 U.S. 181 (1976) ................................................................................ 21

*Mem'l Hosp. v. Maricopa Cty.*,
   415 U.S. 250 (1974) ................................................................................ 17

*Montana v. Crow Tribe of Indians*,
   523 U.S. 696 (1998) ................................................................................ 27

*Planned Parenthood v. Casey*,
   505 U.S. 833 (1992) ................................................................................ 14

*Powers v. Ohio*,
   499 U.S. 410 (1991) ................................................................................ 20

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ...................................................................... 13, 14, 15

*Romer v. Evans*,
   517 U.S. 620 (1996) .......................................................................... passim

*Saenz v. Roe*,
   526 U.S. 489 (1999) ................................................................................ 16

*Skinner v. Oklahoma*,
   316 U.S. 535 (1942) .............................................................................. 3, 13

*Troxel v. Granville*,
   530 U.S. 57 (2000) .................................................................................. 12

*Turner v. Safley*,
   482 U.S. 78 (1987) .............................................................................. 14, 24

*U. S. Department of Agriculture v. Moreno*,
   413 U.S. 528 (1973) ........................................................................................ 20, 28

*United States v. Virginia*,
   518 U.S. 515 (1996) ............................................................................................ 2, 19

*W. Virginia State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943) ............................................................................................... 26

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) ............................................................................................... 14

*United States v. Windsor*,
   133 S. Ct. 2675 (2013) ..................................................................................... passim

*Wolf v. Colorado*,
   338 U.S. 25 (1949) ................................................................................................. 27

*Zablocki v. Redhail*,
   434 U.S. 374 (1978) ................................................................................ 4, 13, 15, 28

## UNITED STATES COURTS OF APPEALS

*Citizens for Equal Protection, Inc. v. Bruning*,
   455 F.3d 859 (2006) ..................................................................................... 26, 29, 30

*Hernandez-Montiel v. INS*,
   225 F.3d 1084 (9th Cir. 2000) ............................................................................... 19

*Holloway v. Lockhart*,
   813 F.2d 874 (8th Cir. 1987) .................................................................................. 12

*Kitchen v. Herbert*,
   2014 WL 2868044 (10th Cir. June 25, 2014) ........................................... 2, 9, 21, 29

*Perry v. Brown*,
   671 F.3d 1052 (9th Cir. 2012) ............................................................................... 23

*SmithKline Beecham Corp. v. Abbot Laboratories*,
   740 F.3d 471 (9th Cir. 2014) ...................................................................... 8, 21, 30

*Thomas v. Gonzales*,
   409 F.3d 1177 (9th Cir. 2005) ............................................................................... 19

*Windsor v. United States*,
   699 F.3d 169 (2d Cir. 2012) ............................................................................ 17, 18

# UNITED STATES DISTRICT COURTS

*Baskin v. Bogan*,
   983 F. Supp. 2d 1021 (S.D. Ind. May 8, 2014) ........................................ 1, 9, 17, 29

*Bassett v. Snyder*,
   951 F. Supp. 2d 939 (E.D. Mich. June 28, 2013) ............................................ 2, 17

*Bishop v. Holder*,
   962 F. Supp. 2d 1252 (N.D. Okla. Jan. 14, 2014) ........................................ passim

*Bostic v. Rainey*,
   970 F. Supp. 2d 456 (E.D. Va. Feb. 14, 2014) ............................................. passim

*Bourke v. Beshear*,
   2014 WL 556729 (W.D. Ky. Feb. 12, 2014) ................................................. passim

*De Leon v. Perry*,
   975 F. Supp. 2d 632 (W.D. Tex. Feb. 26, 2014) ........................................... passim

*DeBoer v. Snyder*,
   973 F. Supp. 2d 757 (E.D. Mich. 2014) .................................................. 1, 17, 29, 30

*Geiger v. Kitzhaber*,
   2014 WL 2054264 (D. Or. May 19, 2014) .................................................. 1, 17, 29

*Gill v. Office of Personnel Mgmt.*,
   699 F. Supp. 2d 374 (D. Mass. 2010) ................................................................. 25

*Golinski v. U.S. Office of Personnel Mgmt.*,
   824 F. Supp. 2d 968 (N.D. Cal. 2012) ................................................................ 14

*Gray v. Orr*,
   2013 WL 6355918 (N.D. Ill. Dec. 10, 2013) ................................................... 2, 17

*In re Balas*,
   449 B.R. 567 (C.D. Cal. 2011) ........................................................................... 17

*Kitchen v. Holder*,
   961 F. Supp. 2d 1181 (D. Utah Dec. 20, 2013) ............................................. passim

*Latta v. Otter*,
  2014 WL 1909999 (D. Idaho May 13, 2014)........................................................ 1, 2, 29, 30

*Morgan v. W. Memphis Steel & Pipe, Inc.*,
  2014 WL 2113534 (E.D. Ark. May 20, 2014) ....................................................... 12

*Obergefell v. Kasich,*
  2013 WL 3814262 (S.D. Ohio July 22, 2013) ....................................................... 2, 17, 26

*Obergefell v. Wymyslo*,
  962 F. Supp. 2d 968 (S.D. Ohio)............................................................................ 1, 11, 23, 30

*Perry v. Schwarzenegger*,
  704 F. Supp. 2d 921 (N.D. Cal. 2010) .................................................................. 4, 17, 18

*Tanco v. Haslam*,
  2014 WL 997525 (M.D. Tenn. Mar. 14, 2014)..................................................... passim

*Whitewood v. Wolf*,
  2014 WL 2058105 (M.D. Pa. May 20, 2014) ........................................................ 1, 9, 29, 30

*Wolf v. Walker*,
  2014 WL 2558444 (W.D. Wis. June 6, 2014)........................................................ passim

## ARKANSAS STATE COURTS

*Ark. Dept. of Human Servs. v. Cole*,
  2011 Ark. 145....................................................................................................... 4

*Eason v. State*,
  11 Ark. 481 (1851) .............................................................................................. 6

*Jegley v. Picado*,
  349 Ark. 600 (2002)............................................................................................. 4, 7

*May v. Daniels*,
  359 Ark. 100 (2004) ............................................................................................ 7

*Wright v. State*,
  2014 WL 1908815 (Pulaski Cty. Cir. Ct. May 9, 2014) ...................................... 2

## STATE COURT CASES

*Baker v. Nelson*,
   191 N.W.2d 185 (Minn. 1971) ................................................................. 27

*Garden State Equal. v. Dow*,
   82 A.2d 336 (N.J. Ch. Div. 2013) ............................................................. 2

*Griego v. Oliver*,
   316 P.3d 865 (N.M. 2013) ..................................................................... 2, 3

*Goodridge v. Department of Public Health*,
   798 N.E.2d 941 (Mass. 2003) ................................................................. 15

*In re Marriage Cases*,
   183 P.3d 384 (Cal. 2002) ........................................................... 14, 17, 18

*Kerrigan v. Comm'r of Pub. Health*,
   957 A.2d 407 (Conn. 2008) .............................................................. 17, 18

*Varnum v. Brien*,
   763 N.W.2d 862 (Iowa 2009) ........................................................... 17, 18

## CONSTITUTIONAL PROVISIONS

Ark. Const. Am. 83 ................................................................................ passim

Ark. Const. art. II § 29 ................................................................................. 4

U.S. Const. amend. XIV ....................................................................... 12, 17

## ARKANSAS STATE STATUTES

Ark. Code Ann. § 9-11-107(1997) ................................................................ 5

Ark. Code Ann. § 9-11-109 ........................................................................... 4

Ark. Code Ann. § 9-11-109 (Michie 1993) .................................................. 4

Ark. Code Ann. § 9-11-208 ........................................................................... 5

## RULES AND REGULATIONS

Fed. R. Civ. P. 56(a) ............................................................................................... 11

## SECONDARY SOURCES

Austin Gelder, Ark. Democrat-Gazette,
   *Arkansans Vote to Ban Gay Marriage*, Nov. 3, 2004 .................................................. 6

Ark. Democrat-Gazette,
   *Bill to Ban Gay Marriage is Introduced*, Jan. 16, 1997 ............................................. 5

Jake Bleed, Ark. Democrat-Gazette,
   *Same-Sex Marriage bans Stays on Ballot – Title not Vague, High Court Rules*, Oct. 8, 2004 .. 7

John C. Thomas, Ark. Democrat-Gazette,
   *Why We Need Amendment 83*, Oct. 22, 2004 ............................................................ 6

S. 5 Am. 2, 81st Gen. Assembly (1997) ...................................................................... 5, 22

S. 5, 81st Gen. Assembly (1997) ................................................................................ 5

S.J.R. 13, 85th Gen. Assembly (2005) ......................................................................... 7

Arkansas law discriminates against same-sex couples through its constitutional and statutory ban of marriages between members of the same sex ("Marriage Bans") and its refusal to recognize such marriages legally performed in other states ("Anti-Recognition Laws"). These laws violate Plaintiffs' rights under the Due Process Clause and the Equal Protection Clause of the United States Constitution. In a landmark decision in *United States v. Windsor*, 133 S. Ct. 2675 (2013), the Supreme Court invalidated Section 3 of the federal Defense of Marriage Act ("DOMA"), wherein Congress had defined "marriage" for purposes of all federal laws to include only marriages of opposite-sex couples. The *Windsor* Court held that DOMA "violate[d] basic due process and equal protection principles." *Id.* at 2693. Such interference with same-sex couples' constitutional rights cannot stand when, as here, "no legitimate purpose overcomes the purpose and effect to disparage and to injure" same-sex couples. *Id.* at 2696. Although *Windsor* addressed a federal law, the Court noted that "[s]tate laws defining and regulating marriage, of course, must respect the constitutional rights of persons." 133 S. Ct. at 2691.

Federal courts around the country since *Windsor* have unanimously agreed. *See Wolf v. Walker*, 2014 WL 2558444 (W.D. Wis. June 6, 2014); *Whitewood v. Wolf*, 2014 WL 2058105 (M.D. Pa. May 20, 2014); *Geiger v. Kitzhaber*, 2014 WL 2054264 (D. Or. May 19, 2014); *Latta v. Otter*, 2014 WL 1909999 (D. Idaho May 13, 2014); *Baskin v. Bogan*, 983 F. Supp. 2d 1021 (S.D. Ind. May 8, 2014); *DeBoer v. Snyder*, 973 Supp. 2d 757 (E.D. Mich. 2014); *Tanco v. Haslam*, 2014 WL 997525 (M.D. Tenn. Mar. 14, 2014); *De Leon v. Perry*, 975 F. Supp. 2d 632 (W.D. Tex. Feb. 26, 2014); *Bostic v. Rainey*, 970 F. Supp. 2d 456 (E.D. Va. Feb. 14, 2014); *Bourke v. Beshear*, 2014 WL 556729 (W.D. Ky. Feb. 12, 2014); *Bishop v. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. Jan. 14, 2014); *Obergefell v. Wymslo*, 962 F. Supp. 2d 968 (S.D. Ohio); *Kitchen v. Holder*, 961 F. Supp. 2d 1181 (D. Utah Dec. 20, 2013); *Gray v. Orr*, 2013 WL

6355918 (N.D. Ill. Dec. 10, 2013); *Obergefell v. Kasich,* 2013 WL 3814262 (S.D. Ohio July 22, 2013); *Bassett v. Snyder*, 951 F. Supp. 2d 939 (E.D. Mich. June 28, 2013).[1] Only one (1) of these cases actually went to trial (*DeBoer v. Snyder*). Just last month Pulaski County Circuit Judge Chris Piazza followed suit and found that the Arkansas constitutional and statutory provisions at issue here are unconstitutional under both the federal and Arkansas constitutions. *Wright v. State*, Case No. 60cv-13-2662, 2014 WL 1908815 (Pulaski Cty. Cir. Ct. May 9, 2014). The others were all disposed of on pleadings and motions alone.

The Tenth Circuit, in the first Federal Court of Appeals decision, recently affirmed the District of Utah decision striking down Utah's Marriage Bans and Anti-Recognition Laws under both the Due Process Clause and the Equal Protection Clause, holding that:

> the Fourteenth Amendment protects the fundamental right to marry, establish a family, raise children, and enjoy the full protection of a state's marital laws. A state may not deny the issuance of a marriage license to two persons, or refuse to recognize their marriage, based solely upon the sex of the persons in the marriage union.

*Kitchen v. Herbert*, 2014 WL 2868044, at *1 (10th Cir. June 25, 2014). This Court should do the same.

"[T]he history of our Constitution . . . is the story of the extension of constitutional rights and protections to people once ignored or excluded." *Latta v. Otter*, 2014 WL 1909999 (D. Idaho May 13, 2014)(quoting *United States v. Virginia,* 518 U.S. 515, 557 (1996)). "It is precisely because the issue raised by this case touches the heart of what makes individuals what they are that we should be especially sensitive to the rights of those whose choices upset the majority." *Bowers v. Hardwick,* 478 U.S. 186, 211 (1986)(Blackmun, J., dissenting), *overruled by Lawrence v. Texas,* 539 U.S. 558 (2003). Under our Constitution, "[t]here exists a foundational

---

[1] The few state courts that have considered this issue have also agreed. *See Garden State Equal. v. Dow*, 82 A.2d 336 (N.J. Ch. Div. 2013); *Griego v. Oliver*, 316 P.3d 865 (N.M. 2013).

belief that certain rights should be shielded from the barking crowds; that certain rights are subject to ownership by all and not the stake hold of popular trend or shifting majorities." *Griego*, 2014 WL 2054264, at *14. As the Western District of Wisconsin recently noted:

> This case is not about whether marriages between same-sex couples are consistent or inconsistent with the teachings of a particular religion, whether such marriages are moral or immoral or whether they are something that should be encouraged or discouraged. It is not even about whether the plaintiffs in this case are as capable as opposite-sex couples of maintaining a committed and loving relationship or raising a family together. Quite simply, this case is about liberty and equality, the two cornerstones of the rights protected by the United States Constitution.

*Wolf*, 2014 WL 2558444, at *2. "There is no asterisk next to the Fourteenth Amendment that excludes gay persons from its protections." *Id.* at *7 (citing *Romer v. Evans*, 517 U.S. 620, 623 (1996)). As the Eastern District of Virginia stated, "[w]e have arrived upon another moment in history when *We the People* becomes more inclusive, and our freedom more perfect." *Bostic*, 970 F. Supp. 2d at 484.

## I.   INTRODUCTION

Arkansas's Marriage Bans and Anti-Recognition Laws impermissibly infringe upon Plaintiffs' constitutionally-protected rights associated with marriage. The Due Process Clause protects the fundamental right to marry and form intimate relationships, as well as the fundamental liberty interests in existing marriages. Additionally, Arkansas's Marriage Bans and Anti-Recognition Laws violate equal protection guarantees by treating same-sex couples differently than all other couples. As the Supreme Court has repeatedly stated, the right to marry is "one of the 'basic civil rights of man'" protected by the Due Process Clause. *Loving v. Virginia*, 388 U.S. 1, 12 (1967) (quoting *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942)). "Choices about marriage . . . are among associational rights [the Supreme] Court has ranked as of basic importance to our society, rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116

(1996)(plurality opinion)(internal citation and punctuation omitted). "Like all fundamental rights, the right to marry vests in every American citizen." *Kitchen*, 961 F. Supp. 2d at 1200 (citing *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978)). "Plaintiffs do not seek recognition of a new right." *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 993 (N.D. Cal. 2010). Plaintiffs simply seek to enjoy "the basic civil right[]" of marriage like opposite-sex couples. Arkansas's marriage laws deny them this right.

###    A.    Arkansas Marriage Laws

The Declaration of Rights in the Arkansas Constitution provides that certain rights are "excepted out of the general powers of government and *shall forever remain inviolate*." Ark. Const. art. II § 29 (emphasis added). These rights include, among others, the same rights to equal protection and due process that are also guaranteed by the United States Constitution. "Arkansas has a rich and compelling tradition of protecting individual privacy and that a fundamental right of privacy is implicit in the Arkansas Constitution." *Jegley v. Picado*, 349 Ark. 600 (2002). Arkansas courts have repeatedly emphasized that these rights protect gay and lesbian citizens. *See*, *e.g.*, *Ark. Dept. of Human Servs. v. Cole*, 2011 Ark. 145 (holding that the Arkansas Adoption and Foster Care Act was "unconstitutional as a violation of the fundamental privacy rights granted by the Arkansas Constitution" because it prevented same-sex couples from adopting children); *Jegley*, 349 Ark. 600 (striking down anti-sodomy law).

Until 1997, Arkansas's recognition statute simply provided that foreign marriages are recognized in the State of Arkansas. *See* Ark. Code Ann. § 9-11-109 (Michie 1993)(amended 1997). Despite Arkansas's "rich and compelling tradition" of protecting marriages and individual privacy, the Arkansas Legislature abruptly changed course in 1997 when it amended the Arkansas statutes to specifically prohibit marriages of same-sex couples and deny legal recognition to valid marriages performed in other states. *See* Ark. Code Ann. § 9-11-109

4

("Marriage shall be only between a man and a woman. A marriage between persons of the same sex is void."); Ark. Code Ann. § 9-11-107(1997)("[a]ll marriages contracted outside this state that would be valid by the laws of the state or country in which the marriages were consummated . . . shall be valid in all courts of this state [but] [t]his section shall not apply to a marriage between persons of the same sex"); Ark. Code Ann. § 9-11-208 (Arkansas will "recognize the marital union only of a man and a woman" and will deny marriage licenses to any person seeking to marry "another person of the same sex.")

The Arkansas Legislature stated that the purpose of Senate Bill 5, which resulted in the 1997 statutory amendments, was "to clarify that Arkansas does not issue marriage licenses to persons of the same sex and does not recognize marriages between members of the same sex and they are not entitled to the benefits of marriage." *See* S. 5, 81st Gen. Assembly (1997). The stated purpose of Senate Bill 5 was "to protect, preserve and enhance the traditional family structure." S. 5 Am. 2, 81st Gen. Assembly (1997). Amendment 2 to Senate Bill 5 concluded that "to recognize so-called same-sex marriage contracted in other states would present a direct affront to these articulated vital state policies." *Id.* Senator Fay Boozman, a co-sponsors of Senate Bill 5, specifically stated that marriage only "occurs between a man and woman and the institution of marriage is to allow children to come in and be nurtured and brought into this society." *Bill to Ban Gay Marriage is Introduced*, Ark. Democrat-Gazette, Jan. 16, 1997. Senator Boozman went on to say that "they [persons with 'alternative lifestyles'] need to leave society alone, specifically in this instance, they need to leave families alone and marriage alone." *Id.*

Arkansas took even more drastic measures in 2004 when it adopted Amendment 83, which defines marriages as consisting "only of the union of one man and one woman," Ark. Const. Am. 83 § 1, and states that "[l]egal status for unmarried persons which is identical or

substantially similar to marital status [except common law marriage] shall not be valid or recognized in Arkansas." Ark. Const. Am. 83 § 2. Although Arkansas statutes already prohibited marriages between same-sex couples, "backers of Amendment [83] said they wanted extra assurances that gay couples can't wed in Arkansas." Austin Gelder, Ark. Democrat-Gazette, *Arkansans Vote to Ban Gay Marriage*, Nov. 3, 2004. Placing such a restriction in the Arkansas Constitution itself was a blatant attempt to deny same-sex couples the constitutional guarantees of due process and equal protection and to prevent future legislatures and courts from establishing or providing such protections. Such action directly contradicts the Arkansas Declaration of Rights, which prohibits "either partial or entire [repeal] . . . of any of the provisions of the [b]ill of [r]ights," including the guarantees of due process and equal protection. *Eason v. State*, 11 Ark. 481, 487 (1851).

Backers of Amendment 83 did nothing to hide the anti-gay animus behind the Amendment.[2] The sponsor of Amendment 83, the Arkansas Marriage Amendment Committee, was spearheaded by members of the "Family Council," a known anti-gay organization. John Thomas, Vice President of the Family Council, wrote a revealing article for the Arkansas Democrat-Gazette in 2004, wherein he stated that "marriage has always meant the socially approved and encouraged sex bond between the male and the female, with the encouragement and expectation of bearing and rearing children and being caretakers of one another." John C. Thomas, Ark. Democrat-Gazette, *Why We Need Amendment 83*, Oct. 22, 2004. Mr. Thomas encouraged voters to "extend a hand to an institution [marriage] that desperately needs it"

---

[2]  Plaintiffs need not prove that those who supported or voted for the bans were motivated by malice or ill will. Rather, it is sufficient to show that Arkansas's marriage bans were enacted for the improper purpose of treating same-sex couples unequally. Such purposeful imposition of unequal treatment does not necessarily involve malice, but may reflect "mere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable" by the government in enacting legislation.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985).

because "[m]arriage has suffered extensive damage, and families and children have borne the wounds." *Id.* Jerry Cox, President of the Family Council, stated "[w]e are very pleased that the people of Arkansas will have the opportunity to define marriage . . . rather than allowing the judges to do it for them." Jake Bleed, Ark. Democrat-Gazette, *Same-Sex Marriage Bans Stay on Ballot – Title not Vague, High Court Rules*, Oct. 8, 2004. The stated purpose of Amendment 83—to "preserve families" while simultaneously harming families of same-sex couples—reflects the same openly discriminatory purpose as DOMA. *See Windsor*, 133 S. Ct. at 2693 (finding that even the statute's name, "Defense of Marriage Act," showed a discriminatory purpose).[3] The *Windsor* Court rejected the same rationales presented for Amendment 83 as merely a pretext to "harm a politically unpopular group." *Id.* at 2693 (internal citation omitted).

Arkansas's Marriage Bans and Anti-Recognition Laws do not continue any existing tradition in Arkansas other than discrimination against same-sex couples. In fact, the Marriage Bans and Anti-Recognition Laws mark a sharp departure from Arkansas's "rich and compelling tradition" of protecting and honoring marriages and the fundamental rights associated therewith. *See Jegley*, 349 Ark. at 631–32. In 2004, Justice Brown stated in *May v. Daniels*, 359 Ark. 100 (2004), that "[u]ndoubtedly" the amendment would be challenged and "[t]here may even be a challenge to the measure's constitutionality." *Id.* at 118 (Brown, J., concurring). This case presents that challenge.

### B.   *Windsor* and Its Progeny

On June 26, 2013, the Supreme Court issued an historic decision in *Windsor*, 133 S. Ct.

---

[3] The Arkansas legislature has since put forth additional rationales for Amendment 83, but all are merely restatements of the original rationale of "preserving marriage and families." *See* S.J.R. 13, 85th Gen. Assembly (2005)(protection of children and families); S.R. 29, 89th Gen. Assembly (2013)("the institution of marriage . . . must be upheld in its traditional form"); 83 H.R. 1049, 89th Gen. Assembly (2013)("traditional" marriage is between a man and a woman and "families consisting of the legal union of one man and one woman for the purpose of bearing and raising children remains the basic unit of our civil society.")

2675, holding that DOMA, a law that refused federal recognition to valid same-sex marriages "violate[d] basic due process and equal protection principles." *Id.* at 2693. The Court echoed *Loving,* noting that such discrimination "demeans the couple, whose moral and sexual choices the Constitution protects." *Id.* at 2694 (citing *Lawrence,* 539 U.S. 558). "[T]he decision of the United States Supreme Court in *Windsor* was not unprecedented. The Court relied upon its equal protection analysis from a 1996 case holding that an amendment to a state constitution, ostensibly merely prohibiting any special protections for gay people, in truth violated the Equal Protection Clause under even a rational basis analysis." *Wymyslo,* 962 F. Supp. 2d at 984 (citing *Romer v. Evans,* 517 U.S. 620 (1996)).

*Windsor* suggests that laws that discriminate against same-sex couples must satisfy some form of heightened scrutiny. *Windsor,* 133 S. Ct. at 2692 ("[d]iscriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision."). The *Windsor* Court conducted this "careful consideration" analysis and concluded that DOMA singled out a subset of legally married persons for no reason other than to disadvantage this class of persons and to ensure that they did not receive any federal rights or benefits associated with marriage. The Court thus found no legitimate purpose that could "overcome[] the purpose and effect to disparage and injure" same-sex couples. *Id.* at 2696.

"*Windsor* review is not rational basis review. In its words and its deed, *Windsor* established a level of scrutiny for classifications based on sexual orientation that is unquestionably higher than rational basis review. In other words, *Windsor* requires that heightened scrutiny be applied to equal protection claims involving sexual orientation." *SmithKline Beecham Corp. v. Abbot Laboratories*, 740 F.3d 471, 480–81 (9th Cir. 2014). "[T]he Supreme Court's analysis in *Windsor* (as well as in *Romer)* had more "bite" than a rational basis

review would suggest." *Wolf*, 2014 WL 2558444, at *10; *see also*, *Whitewood*, 2014 WL 2058105, at *11 ("Notably, the Court's sexual orientation jurisprudence has generally afforded considerably less deference than would be expected under usual rational-basis review.") The Tenth Circuit Court of Appeals applied strict scrutiny in *Kitchen* after determining that the fundamental right to marry extends to same-sex couples. *Kitchen*, 2014 WL 2868044.

*Windsor* is directly applicable to state regulation of marriage. "[C]ourts have uniformly rejected a narrow reading of *Windsor*—such as that advanced by defendants here—and have found that *Windsor* protects the rights of same-sex couples in various contexts," including state regulation of marriage. *Tanco*, 2014 WL 997525, at *5. Although "marriage and domestic relations are traditionally left to the states[,] the restrictions put in place by the state must comply with the United States Constitution's guarantees of equal protection of the laws and due process." *Baskin*, 983 F. Supp. 2d 1021; *see also*, *Windsor*, 133 S. Ct. at 2691 (a state's regulation of marriage "must respect the constitutional rights of persons."). Justice Scalia even stated in his dissent that "the view that *this* Court will take of state prohibition of same-sex marriage is indicated beyond mistaking in today's opinion." *Id.* at 2709 (Scalia, J., dissenting). Any infringement upon same-sex couples' constitutionally-protected liberty interest in their marriages—by the state or federal government—is "unconstitutional as a deprivation of the liberty of the person protected by the [Fourteenth] Amendment of the Constitution." *Id.* at 2695.

*Windsor* initiated a national push to invalidate state marriage bans and anti-recognition laws. As Justice Scalia foreshadowed, federal courts have almost unanimously followed *Windsor* and applied its holding to both state constitutional amendments and statutes.[4] These decisions

---

[4] Only one (1) case since *Windsor* has not found that same-sex marriage bans and anti-recognition laws are unconstitutional. *See Merritt v. Att'y Gen.*, 2013 WL 6044329 (M.D. La. Nov. 14, 2013). However, *Merritt* was filed by a pro se plaintiff who did not argue (and the court did not discuss) that *Windsor* even applies to state

have rested on both due process and equal protection grounds. The overwhelming conclusion from these recent cases is that *Windsor* changed the landscape for same-sex couples and provides an avenue by which courts may end discrimination and animus directed at same-sex couples. As the Middle District of Tennessee recently held , "[a]t this point, all signs indicate that, in the eyes of the United States Constitution, the plaintiffs' marriages will be placed on equal footing of those of heterosexual couples and that proscriptions against same-sex marriage will soon become a footnote in the annals of American history." *Tanco*, 2014 WL 997525, at *9.

Federal and state courts have held that discriminatory laws targeting same-sex couples cannot stand in light of *Windsor*. "The alleged right to same-sex marriage that the State claims the Plaintiffs are seeking is simply the same right that is currently enjoyed by heterosexual individuals." *Kitchen*, 961 F. Supp. 2d at 1202. "If, as is clear from the Supreme Court cases discussing the right to marry, a heterosexual person's choices about intimate association and family life are protected from unreasonable government interference in the marital context, then a gay or lesbian person also enjoys these same protections." *Id.*; *see also*, *Tanco*, 2014 WL 997525 (granting preliminary injunction on anti-recognition law claims); *De Leon*, 975 F. Supp. 2d 632 (granting preliminary injunction after finding that both marriage ban and anti-recognition law violated due process and equal protection guarantees); *Bostic*, 970 F. Supp. 2d 456 (granting summary judgment for plaintiffs and striking down Virginia constitutional amendment and statutes banning same-sex marriage); *Bourke*, 2014 WL 556729 (striking down anti-recognition statutes and a constitutional amendment because "[t]he principal purpose is to impose inequality"); *Bishop*, 962 F. Supp. 2d 1252 (striking down a state constitutional marriage ban as

---

regulation of marriage. Every court that has considered *Merritt* has found it an unpersuasive outlier that contains no reasoning sufficient to uphold such discriminatory marriage laws. *See Kitchen*, 2014 WL 2868044, at *8; *De Leon*, 975 F.Supp.2d at 648; *Wolf*, 2014 WL 2558444, at *5.

a violation of equal protection, holding that "the majority view in Oklahoma must give way to individual constitutional rights."); *Wymyslo*, 962 F. Supp. 2d at 985 ("in derogation of law, the Ohio system has unjustifiably created two tiers of couples."). As the Eastern District of Virginia noted, "[w]e have arrived upon another moment in history when *We the People* becomes more inclusive, and our freedom more perfect." *Bostic*, 970 F. Supp. 2d 484.

All courts to consider this issue have agreed that state marriage ban and anti-recognition laws cannot satisfy even rational basis review. *See e.g.*, *Tanco*, 2014 WL 997525 ("plaintiffs are likely to succeed on the merits of their equal protection challenge, even under a 'rational basis' review."); *Bourke*, 2014 WL 556729, at *5 ("[u]ltimately, the result in this case is unaffected by the level of scrutiny applied"); *Kitchen*, 961 F. Supp. 2d at 1205 ("State of Utah has not demonstrated a rational, much less a compelling, reason why the Plaintiffs should be denied their right to marry."). As the District of Utah noted in *Kitchen*, "[t]he Supreme Court's decision in *Lawrence* removed the only ground—moral disapproval—on which the State could have at one time relied to distinguish the rights of gay and lesbian individuals from the rights of heterosexual individuals." *Id.* at 1204. "[C]ourts reviewing marriage regulations, by *either* the state or federal government, must be wary of whether 'defending' traditional marriage is a guise for impermissible discrimination against same-sex couples." *Bishop*, 962 F. Supp. 2d at 1279 (emphasis in original).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "the dispute may be decided on purely legal grounds." *Morgan v. W. Memphis Steel &*

*Pipe, Inc.*, 2014 WL 2113534, at *1 (E.D. Ark. May 20, 2014)(citing *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir. 1987)). The parties in the present case do not dispute the facts—that Arkansas will not allow Plaintiffs to marry and will not recognize valid same-sex marriages performed in other states. Thus, this Court may properly decide this case on purely legal grounds.

## III. ARKANSAS'S MARRIAGE BANS AND ANTI-RECOGNITION LAWS VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS

Arkansas law discriminates against same-sex couples through its constitutional and statutory Marriage Bans and Anti-Recognition Laws. This interference with same-sex couples' fundamental rights is unconstitutional because "no legitimate purpose overcomes the purpose and effect to disparage and to injure" same-sex couples. *Windsor*, 133 S. Ct. at 2696. Like in *Windsor*, Arkansas's Marriage Bans and Anti-Recognition Laws "violate basic due process and equal protection principles." *Id.* at 2693.

### A.   Arkansas's Marriage Laws Violate Plaintiffs' Due Process Rights

The Due Process Clause of the Fourteenth Amendment establishes that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause "guarantees more than fair process"—it "also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (internal quotation marks and citations omitted). "Choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as 'of basic importance in our society,' rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *Id.* at 116–17 (internal citations omitted). Arkansas's marriage laws violate these fundamental rights. "These laws interject profound

12

government interference into one of the most personal choices a person makes." *Bostic*, 970 F. Supp. 2d at 472.

### 1.    *Fundamental Right to Marry*

"Under our Constitution, the freedom to marry or not marry . . . resides with the individual and cannot be infringed by the State." *Loving*, 388 U.S. at 12.  "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men" and is thus "one of the 'basic civil rights of man'" protected by the Due Process Clause. *Id.* (quoting *Skinner*, 316 U.S. at 541). For many people, marriage is "the most important relation in life." *Zablocki*, 434 U.S. at 384 (internal quotation omitted). It "is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred." *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965). The freedom to marry safeguards "the decentralized structure of our democratic society," ensuring that there is a realm of private family life into which the government may not impermissibly intrude. *Lehr v. Robertson*, 463 U.S. 248, 257 (1983). Thus, "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984). Thus, "the Supreme Court has held on numerous occasions that marriage is a fundamental right protected by the Constitution." *Wolf*, 2014 WL 2558444, at *6 (citing *Turner v. Safley*, 482 U.S. 78, 95 (1987); *Cleveland Bd. Of Educ. V. LaFluer*, 414 U.S. 632, 639–40 (1974); *Loving*, 388 U.S. at 12).

"The right to marry is inseparable from our rights to privacy and intimate association." *Bostic*, 970 F. Supp. 2d at 471. For decades, the Supreme Court has held that spousal relationships are among those intimate family bonds whose "preservation" must be afforded "a

13

substantial measure of sanctuary from unjustified interference by the State." *Roberts*, 468 U.S. at 618; *see also Griswold*, 381 U.S. at 485–86 (marriage is "a relationship lying within the zone of privacy created by several fundamental constitutional guarantees"); *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)(recognizing "marital privacy" as a fundamental liberty interest).

"Fundamental rights, once recognized, cannot be denied to particular groups on the ground that these groups have historically been denied those rights." *In re Marriage Cases*, 183 P.3d 384, 430 (Cal. 2002) (internal quotations omitted). In *Loving*, 388 U.S. 1, the Supreme Court struck down Virginia's laws barring interracial couples from marriage, even though race-based restrictions on marriage were deeply entrenched in our nation's history and traditions. As stated in *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), "interracial marriage was illegal in most States in the 19th century, but the Court was no doubt correct in finding it to be an aspect of liberty protected against state interference by the substantive component of the Due Process Clause in *Loving*." *Id.* at 847–48. "[N]either history nor tradition could save a law prohibiting miscegenation from constitutional attack." *Lawrence*, 539 U.S. at 577–78 (quotation omitted). *Loving* thus did not recognize a new right to "interracial marriage," but rather affirmed that "[t]he freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *See Loving*, 388 U.S. at 12.

The notion that fundamental rights are protected for some groups and not others is contrary to our Constitution. Supreme Court cases addressing the "fundamental right to marry" do not recast the issue as "the right to interracial marriage," "the right to prisoner marriage," or "the right to marry persons owing child support." *Golinski v. U.S. Office of Personnel Mgmt.*, 824 F. Supp. 2d 968, 982 n.5 (N.D. Cal. 2012) (citing *Loving*, 388 U.S. at 12, *Turner* , 482 U.S. at 94–96 (1987), and *Zablocki*, 434 U.S. at 383–86). As the District of Utah recently explained:

14

> The alleged right to same-sex marriage that the State claims the Plaintiffs are seeking is simply the same right that is currently enjoyed by heterosexual individuals: the right to make a public commitment to form an exclusive relationship and create a family with a partner with whom the person shares an intimate and sustaining emotional bond. This right is deeply rooted in the nation's history and implicit in the concept of ordered liberty because it protects an individual's ability to make deeply personal choices about love and family free from government interference. And, as discussed above, this right is enjoyed by all individuals.

*Kitchen*, 961 F. Supp. 2d at 1202. "The reality that marriage rights in states across the country have begun to be extended to more individuals fails to transform such a fundamental right into some 'new' creation." *Bostic*, 970 F. Supp. 2d at 472. "To define the institution of marriage by the characteristics of those to whom it always has been accessible, in order to justify the exclusion of those to whom it never has been accessible, is conclusory and bypasses the core question." *Goodridge v. Department of Public Health* 798 N.E.2d 941, 972–73 (Mass. 2003)(Greaney, J., concurring). "[T]he Constitution undoubtedly imposes constraints on the State's power to control the selection of one's spouse." *Roberts,* 468 U.S. at 620.

Plaintiffs seek "the same right that is currently enjoyed by heterosexual individuals: the right to make a public commitment to form an exclusive relationship and create a family with a partner with whom the person shares an intimate and sustaining emotional bond." *Kitchen*, 961 F. Supp. 2d at 1202; *see also Bostic,* 970 F. Supp. 2d at 472 ("Plaintiffs ask for nothing more than to exercise a right that is enjoyed by the vast majority of Virginia's adult citizens."). Arkansas's marriage laws violate Plaintiffs' dignity and autonomy by denying persons in same-sex relationships the freedom that other Arkansas residents enjoy—the ability to marry the person with whom they have forged enduring bonds of love and commitment. "Gay and lesbian individuals share the same capacity as heterosexual individuals to form, preserve and celebrate loving, intimate and lasting relationships. Such relationships are created through the exercise of

15

sacred, personal choices—choices, like the choices made by every other citizen, that must be free from unwarranted government interference." *Bostic,* 970 F. Supp. 2d at 472. Excluding Plaintiffs and other same-sex couples from marriage undermines the core constitutional values and principles underlying the fundamental right to marry. The Due Process Clause guarantees that opportunity.

### 2.   *Right to Travel*

The "constitutional right to travel from one State to another is firmly embedded in [this country's] jurisprudence." *Saenz v. Roe*, 526 U.S. 489, 498 (1999). "A state law implicates the right to travel when it . . . uses any classification which serves to penalize the exercise of that right." *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903, 106 (1986)(internal quotation marks and citations omitted). Arkansas's Anti-Recognition Laws impermissibly burden Plaintiffs' right to travel because, while Arkansas generally recognizes valid out-of-state marriages, it categorically denies recognition of same-sex marriages performed in other states. If an opposite-sex couple travels to an out-of-state location to marry, their marriage is recognized as valid in Arkansas when they return home. However, same-sex couples are effectively treated as legal strangers in Arkansas despite their valid out-of-state marriage. Thus, same-sex couples face a severe penalty for exercising their right to travel. *See De Leon*, 975 F. Supp. 2d  at 662 (concluding that Texas's anti-recognition law, which declares that "when a same-sex couple crossed the Texas border, their marriage not only did not exist for purpose of Texas law, but never existed at all . . . defies logic"). Plaintiffs seek the same right to travel as other married couples—the ability to travel to another state to marry without facing a categorical nullification of that marriage the moment they reenter the state. The State must present "a compelling state interest" for its denial of this fundamental right. *See Mem'l Hosp. v. Maricopa Cty.*, 415 U.S.

250, 258 (1974).

**B.      Arkansas's Marriage Laws Deny Same-Sex Couples Equal Protection Of The Laws**

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of its laws." U.S. Const. amend. XIV, § 1. Arkansas law discriminates against same-sex couples on the bases of their gender and sexual orientation. Courts reviewing a law that discriminates based on gender or sexual orientation may not simply defer to the state's judgment, but must apply heightened scrutiny. The laws at issue in this case fail this exacting test. In fact, the laws cannot even withstand rational basis review. *See Geiger*, 2014 WL 2052426; *Baskin*, 893 F. Supp. 2d 1021; *DeBoer*, 975 F. Supp. 2d 757; *Tanco*, 2014 WL 997525; *De Leon*, 975 F. Supp. 2d 632; *Bostic*, 970 F. Supp. 2d at 469–70; *Bourke*, 2014 WL 556729; *Bishop*, 962 F. Supp. 2d 1252; *Gray v. Orr*, 2013 WL 6355918; *Obergefell*, 2013 WL 3814262; *Bassett v. Snyder*, 951 F. Supp.2d 939.

### 1.      *Discrimination Based on Sexual Orientation*

Courts have increasingly recognized that laws that discriminate on the basis of sexual orientation must satisfy heightened scrutiny. *See Windsor v. United States*, 699 F.3d 169, 181 (2d Cir. 2012), *aff'd sub nom. Windsor,* 133 S.Ct. 2675; *Perry*, 704 F. Supp. 2d at 997; *In re Balas*, 449 B.R. 567, 575 (C.D. Cal. 2011); *Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407, 431–32 (Conn. 2008); *Varnum v. Brien*, 763 N.W.2d 862, 896 (Iowa 2009); *In re Marriage Cases*, 183 P.3d at 442–43. In *Windsor*, the Supreme Court held that "[d]iscriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision." *Windsor*, 133 S. Ct. at 2692. Likewise, the United States Department of Justice has concluded that courts should view legislative classifications based on sexual

orientation with suspicion and should deny such laws a presumption of constitutionality.[5] Arkansas's marriage laws expressly single out same-sex couples and treat them unequally based on their sexual orientation. The Court should thus apply heightened scrutiny.

The Supreme Court's application of "careful consideration" in *Windsor* is consistent with the established equal protection framework for determining which classifications courts should scrutinize more closely. The most important factors in this analysis are: (1) whether a classified group has suffered a history of invidious discrimination, and (2) whether the classification has any bearing on a person's ability to perform in or contribute to society. *See Windsor*, 699 F.3d at 181 (2d Cir. 2012). Courts may also consider two additional non-dispositive factors: (3) whether the characteristic is immutable or an integral part of one's identity, and (4) whether the group is a minority or lacks sufficient political power to protect itself through the democratic process. *See, e.g.*, *Windsor,* 699 F.3d at 181. (ADD post-*Windsor* cases). Sexual orientation readily satisfies all of these factors. *See, e.g., Windsor*, 699 F.3d at 185; *In re Marriage Cases,* 183 P.3d at 445; *Kerrigan,* 957 A.2d at 461; *Varnum,* 763 N.W.2d at 896.

"[T]he Constitution protects" the "moral and sexual choices" of same-sex couples, *Windsor*, 133 S.Ct. at 2694. However, "[f]or centuries there have been powerful voices to condemn homosexual conduct as immoral." *Lawrence*, 539 U.S. at 571. The "state-sponsored condemnation" of homosexuality has led to "discrimination both in the public and in the private spheres." *Id.* at 575–76. This long history of significant discrimination against lesbian and gay people in the United States continues to this day. *See  Perry*, 704 F. Supp. 2d at 981–85. Sexual orientation and sexual identity "are so fundamental to one's identity that a person should not be

---

[5] *See, e.g.*, Brief for the United States on the Merits Question, *Windsor,* Case No. 12-307 (U.S. Supreme Court Feb. 2013)(available  at  http://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs-v2/12-307_pet_usa_merits.authcheckdam.pdf).

required to abandon them" to avoid discrimination. *Hernandez-Montiel v. INS*, 225 F.3d 1084, 1093 (9th Cir. 2000), *overruled in part on other grounds by Thomas v. Gonzales*, 409 F.3d 1177 (9th Cir. 2005). Thus, sexual orientation is an "obvious, immutable, or distinguishing characteristic[] that define[s]" gay men and lesbians as a discrete group. *See Bowen v. Gilliard*, 483 U.S. 587, 602 (1987).

Sexual orientation "provides no sensible ground for differential treatment." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440 (1985). "The Constitution's guarantee of equality 'must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *Windsor*, 133 S. Ct. at 2693 (citations omitted).

### 2.     *Discrimination Based on Gender*

Arkansas's Marriage Bans and Anti-Recognition Laws also warrant heightened equal protection scrutiny because they classify persons on the basis of gender. Each Plaintiff, for instance, would be permitted to marry her partner (or, in the case of the married Plaintiffs, would be recognized as a spouse) if her partner were male. Arkansas's Marriage Bans "involve[] sex-based classifications because [they] prohibit[] a man from marrying another man, but do[] not prohibit that man from marrying a woman." *See Kitchen,* 961 F. Supp. 2d at 1206. The Equal Protection Clause prohibits such "differential treatment or denial of opportunity" based on a person's gender in the absence of an "exceedingly persuasive" justification. *United States v. Virginia*, 518 U.S. at 532–33 (internal quotation marks omitted). Defendants cannot muster even a minimally plausible—let alone, an "exceedingly persuasive"—justification for employing these gender-based distinctions to deny recognition to the lawful marriages of same-sex couples.

Defendants may argue that Arkansas's marriage laws do not discriminate based on

19

gender because they apply equally to prohibit both men from marrying men and women from marrying women. In *Loving*, however, the Supreme Court rejected the analogous argument that a law prohibiting interracial marriage should stand because it imposed its restrictions "equally" on members of different races. 388 U.S. at 8; *see also Powers v. Ohio*, 499 U.S. 410 (1991)(reiterating *Loving*'s holding "that racial classifications do not become legitimate on the assumption that all persons suffer them in equal degree"). That same reasoning applies to gender-based classifications. *See J.E.B. v. Alabama*, 511 U.S. 127, 140–41 (1994)(holding that sex-based peremptory challenges are unconstitutional even though they affect both male and female jurors). Similarly, the sex-based classifications in Arkansas's marriage statutes are not immune from heightened scrutiny simply because they affect men and women in the same manner. "The neutral phrasing of the Equal Protection Clause, extending its guarantee to 'any person,' reveals its concern with rights of individuals, not groups." *J.E.B.*, 511 U.S. at 152 (Kennedy, J., concurring). Thus, the relevant inquiry under the Equal Protection Clause is whether the law treats *an individual* differently because of his or her gender. *Id.* at 140–41. These laws do.

## IV.   ARKANSAS'S MARRIAGE BANS AND ANTI-RECOGNITION LAWS ARE UNCONSTITUTIONAL UNDER ANY STANDARD OF REVIEW

Arkansas's Marriage Bans and Anti-Recognition Laws serve no legitimate government purpose. On their face, the purpose and effect of these laws is to "impose a disadvantage, a separate status, and so a stigma upon all" same-sex couples who wish to marry or who are married in other states. *See Windsor* 133 S. Ct. at 2639. In *Windsor*, the Court reaffirmed that "'a bare congressional desire to harm a politically unpopular group of people cannot' justify disparate treatment of that group." *Id.* at 2693 (citing *U. S. Department of Agriculture v. Moreno*, 413 U.S. 528 (1973)). Arkansas's interest in treating same-sex couples differently from opposite-

sex couples is the same improper purpose that the Supreme Court rejected in *Windsor*:  "to impose inequality." *Id.* at 2694; *see also Romer,* 517 U.S. 635–36 (striking down state constitutional amendment that classified gay people "not to further a proper legislative end but to make them unequal to everyone else."). Other courts considering this issue have unanimously rejected all asserted justifications for similar laws. *See*, *e.g*, *Bourke*, 2014 WL 556729, at *5.

Like DOMA, Arkansas's marriage laws violate both due process and equal protection under any form of constitutional analysis. Under the Due Process Clause, laws that burden fundamental rights must satisfy heightened scrutiny. *See Kitchen*, 2014 WL 2868044 (applying strict scrutiny because such laws burden the fundamental right to marry). Likewise, laws that discriminate based on sexual orientation or sex must satisfy some form of heightened scrutiny under the Equal Protection Clause. In fact, "'*Windsor* requires that heightened scrutiny be applied to equal protection claims involving sexual orientation.'" *Wolf*, 2014 WL 2558444 (quoting *SmithKline Beecham Corp.*, 740 F.3d at 480¬–81).[6] However, the Court need not decide which level of scrutiny applies here because Arkansas's Marriage Bans and Anti-Recognition Laws cannot survive even rational basis review.

Under rational basis review, the State's asserted interest must be "legitimate," or "properly cognizable." *Cleburne*, 473 U.S. at 448. However, rational basis review is not "toothless." *Matthews v. De Castro*, 429 U.S. 181, 185 (1976). An asserted justification must "find some footing in the realities of the subject addressed by the legislation." *Heller v. Doe*, 509

---

[6] "In *SmithKline*, 740 F.3d at 981–83, the court of appeals relied on four factors to conclude that *Windsor* applied heightened scrutiny: (1) the Supreme Court did not consider "conceivable" justifications for the law not asserted by the defenders of the law; (2) the Court required the government to "justify" the discrimination; (3) the Court considered the harm that the law caused the disadvantaged group; and (4) the Court did not afford the law a presumption of validity. Finding all of these things inconsistent with rational basis review, the court of appeals concluded that the Supreme Court must have been applying some form of heightened scrutiny." *Wolf*, 2014 WL 2558444.

U.S. 312, 321 (1993). Additionally, the State must demonstrate a rational relationship "between the classification adopted and the object to be attained." *Romer*, 517 U.S. at 632. "By requiring that the classification bear a rational relationship to an independent and legitimate legislative end, we ensure that classifications are not drawn for the purpose of disadvantaging the group burdened by the law." *Id*. at 633.

The primary rationale stated when Arkansas enacted the statutory prohibitions in 1997 was "to protect, preserve and enhance the traditional family structure." S. 5 Am. 2, 81st Gen. Assembly (1997). In 2004, when Amendment 83 was placed on the ballot, one of the sponsors of the amendment wrote that "marriage has always meant the socially approved and encouraged sex bond between the male and the female, with the encouragement and expectation of bearing and rearing children and being caretakers of one another." John C. Thomas, Ark. Democrat-Gazette, *Why We Need Amendment 3*, Oct. 22, 2004.

Simply asserting a bare desire to maintain the status quo does nothing but circle back to and perpetuate the challenged classification without justification. The Supreme Court in *Windsor* and other courts since *Windsor* have unanimously rejected each alleged rationale asserted for similar or identical discriminatory laws. As the District of Utah recently stated, "[t]he Supreme Court's decision in *Lawrence* removed the only ground—moral disapproval—on which the State could have at one time relied to distinguish the rights of gay and lesbian individuals from the rights of heterosexual individuals." *Kitchen*, 961 F. Supp. 2d at 1204. None of the potential justifications for Arkansas's Marriage Bans and Anti-Recognition Laws satisfies even the minimally-intrusive rational basis review, let alone the careful scrutiny that Supreme Court precedent requires.

22

A.    **Protecting the "Traditional" Notion of Marriage is not a Rational Basis for the Marriage Ban or Anti-Recognition Laws**

The Marriage Bans and Anti-Recognition Laws do not continue any existing tradition other than discrimination against same-sex couples. However, even "tradition, alone, cannot form a rational basis for a law." *De Leon*, 975 F. Supp. 2d at 655 (citing *Lawrence*, 539 U.S. at 601(Scalia J., dissenting)("'[p]reserving the traditional institution of marriage' is just a kinder way of describing the State's *moral disapproval* of same-sex couples."). "[C]ourts reviewing marriage regulations, by *either* the state or federal government, must be wary of whether 'defending' traditional marriage is a guise for impermissible discrimination against same-sex couples." *Bishop*, 962 F. Supp. 2d 1252. Every court to undertake this analysis has found that "protecting traditional marriage" is not a rational basis for such discriminatory laws. "[A]lthough [the law at issue] rationally promotes the State's interest in upholding one particular moral definition of marriage, this is not a permissible justification," because "the majority view . . . must give way to individual constitutional rights." *Id.* "That [such] laws are rooted in tradition . . . cannot alone justify their infringement on individual liberties." *Bourke*, 2014 WL 556729.

B.    **Encouraging Procreation is not a Rational Basis for the Marriage Bans or Anti-Recognition Laws**

Each of the procreation-related justifications "has failed rational basis review in every court to consider them post-*Windsor*, and most courts pre-*Windsor*." *Bourke*, 2014 556729, at *8 (citing *Bishop*, 962 F. Supp. 2d at 1290–93; *Kitchen*, 961 F. Supp. 2d at 1211–12 ; *Wymyslo,* 962 F. Supp. 2d 968). "There is no rational reason to think that taking away the designation of 'marriage' from same-sex couples would advance the goal of encouraging California's opposite-sex couples to procreate more responsibly." *Perry v. Brown*, 671 F.3d 1052, 1088 (9th Cir. 2012); *see also*, *Bostic*, 970 F. Supp. 2d at 478 ("Of course the welfare of our children is a legitimate state interest. However, limiting marriage to opposite-sex couples fails to further this

23

interest."). This rationale "is 'so far removed' from the classification, [that] it is impossible to credit" and relies on "factual assumptions that are beyond the 'limits of rational speculation.'" *Windsor v. United States*, 833 F. Supp. 2d 394 (S.D.N.Y. 2012)(quoting *Romer*, 517 U.S. at 635; *Heller*, 509 U.S. at 320).

"Procreation is not and has never been a qualification of marriage." *De Leon*, 975 F. Supp. 2d at 654 (citing *Lawrence*, 539 U.S. at 605 (Scalia J., dissenting)). In fact, the Supreme Court has long held that married couples have a right to *not* procreate. *Griswold*, 381 U.S. at 485–86. The Constitution protects the right of individuals to marry regardless of their ability or desire to procreate, including those who are elderly, infertile, and incarcerated. *See Lawrence*, 539 U.S. at 604 (Scalia, J., dissenting)("[W]hat justification could there possibly be for denying the benefits of marriage to homosexual couples exercising '[t]he liberty protected by the Constitution'? Surely not the encouragement of procreation, since the sterile and the elderly are allowed to marry.")(internal citation omitted)). Even prisoners with no right to conjugal visits have the fundamental right to marry because "many important attributes of marriage remain . . . [including] expressions of emotional support[,] exercise of religious faith[, and] an expression of personal dedication." *Turner*, 482 U.S. at 95. Arkansas's marriage laws classify based on the sex and sexual orientation of those who want to marry, not whether they can procreate.

"Permitting same-sex couples to receive a marriage license does not harm, erode, or somehow water-down the 'procreative' origins of the marriage institution, any more than marriages of couples who cannot 'naturally procreate' or do not ever wish to 'naturally procreate.'" *Bishop*, 962 F. Supp. 2d at 1291. Same-sex couples routinely have children through assisted reproduction and adoption and are just as capable of raising children as opposite-sex couples. In fact, "children raised by gay and lesbian parents are just as likely to be well-adjusted

as those raised by heterosexual parents." *Gill v. Office of Personnel Mgmt.*, 699 F. Supp. 2d 374, 388 (D. Mass. 2010). "[A] stable two-parent family relationship, supported by the state's official recognition and protection, is equally as important for the numerous children . . . who are being raised by same-sex couples as for those children being raised by opposite-sex couples (whether they are biological parents or adoptive parents.)." *In re Marriage Cases*, 183 P.3d at 433. In fact, the Arkansas Supreme Court has expressly *allowed* same-sex couples to adopt children. *See Cole*, 2011 Ark. 145. Yet Arkansas is actively denying children the very benefits of marriage by preventing same-sex couples from marrying or having their marriages recognized in Arkansas.

### C.   The Anti-Recognition Laws and Marriage Bans do not Promote Stability, Uniformity, or Continuity of the Laws During an Ongoing Debate About Marriage

Defendants can state no properly cognizable basis for fearing that the marriages of gay and lesbian couples will have any detrimental effect on marriage or society as a whole. The argument that recognizing the marriages of same-sex couples would result in a corrosion of marital norms and ultimate societal devaluation of marriage as an institution is simply a cover for discrimination. Fears that treating same-sex couples equally will be harmful to marriage or society are based on prejudice. Such fears have no factual basis and lack any "footing in the realities" of the existing structures of marriage and family law. *Heller*, 509 U.S. at 321.[7] "[M]ere negative attitudes or fear, unsubstantiated by factors which are properly cognizable" are not permissible bases for differential treatment. *Cleburne*, 473 U.S. at 448.

---

[7] States that have permitted same-sex couples to marry have seen no negative effects on marriages. *Id. See also* Chris Kiry & Hanna Rosin, *Does Gay Marriage Destroy Marriage?: A Look at the Data*, Slate (May 23, 2012, 8:00 a.m.),                                                      available                                          at http://www.slate.com/articles/double_x/doublex/2012/05/does_gay_marriage_affect_marriage_or_divorce_rates_.html (last visited Oct. 28, 2013)(in the five states first allowing marriages by same-sex couples, "divorce rates following legalization have been lower on average than the years preceding it, even as the national divorce rates grew.").

D.      **The Fact that Arkansas Adopted Amendment 83 by Ballot Measure Does not Immunize Amendment 83 from Constitutional Scrutiny**

"[T]he Constitution, including its equal protection and due process clauses, protects us from all government action at any level, whether in the form of an act by a high official, a state employee, a legislature, or a vote of the people adopting a constitutional amendment." *Bourke*, 2014 WL 556729. "'It is emphatically the province and duty of the judicial system to say what the law is.' Initially that decision rests with one judge; ultimately, other judges, including the justices of the Supreme Court, have the final say. That is the way of our Constitution." *Id.* (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). "Regardless of the justifications provided by an enactment's proponents, the Supreme Court has clearly stated that if such an enactment violates the U.S. Constitution—whether passed by the people or their representatives—judicial intervention is necessary to preserve the rule of law." *Obergefell*, 962 F. Supp. 2d at 981. "One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other *fundamental rights may not be submitted to vote; they depend on the outcome of no elections.*" *Id.* (quoting *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943))(emphasis in original).

V.      *BAKER v. NELSON* **AND** *CITIZENS FOR EQUAL PROTECTION, INC.vV. BRUNING* **DO NOT CONTROL THIS CASE**

The Court need not follow *Baker v. Nelson*, 409 U.S. 810 (1972)  and *Citizens for Equal Protection, Inc. v. Bruning*, 455 F.3d 859 (2006) as each decision is inapplicable here. This area of constitutional jurisprudence has vastly changed since these cases were handed down, including the Supreme Court's 2013 decision in *Windsor*. While the *Baker* and *Bruning* decisions represent the constitutional protections afforded to same-sex couples at the time they were decided, this Court should not blindly follow cases as controlling without first examining the Constitution itself and the changing jurisprudence in this area of law. "It is of the very nature

26

of a free society to advance in its standards of what is deemed reasonable and right. Representing as it does a living principle, due process is not confined within a permanent catalogue of what may at a given time be deemed the limits or the essentials of fundamental rights." *Wolf v. Colorado*, 338 U.S. 25 (1949). As the Court stated in *Lawrence*, 539 U.S. 558:

> [h]ad those who drew and ratified the . . . Fourteenth Amendment known the components of liberty in its manifold possibilities, they might have been more specific. They did not presume to have this insight. They knew times can blind us to certain truths and later generations can see that laws once thought necessary and proper in fact only serve to oppress. As the Constitution endures, persons in every generation can invoke its principles in search of their own greater freedoms.

*Id.* at 178–79. This Court should adhere to these principles in following the Supreme Court's guidance in *Windsor* and the multitude of cases decided thereafter addressing this issue. The time has come for same-sex couples to invoke the Constitution's principles and achieve their own "greater freedoms," like the many minorities who have done so before them.

A. *Baker v. Nelson*

The Supreme Court's summary dismissal in *Baker v. Nelson*, 409 U.S. 810 (1972), for want of a substantial federal question, does not control this case. Summary dismissals "'are not of the same precedential value as would be an opinion of [the Supreme] Court treating the question on the merits.'" *Wolf*, 2014 WL 2558444, at *4 (quoting *Edelman v. Jordan,* 415 U.S. 651, 671 (1974)). "'A summary disposition affirms only the judgment of the court below, and no more may be read into [such disposition] than was essential to sustain that judgment.'" *Montana v. Crow Tribe of Indians*, 523 U.S. 696, 714 n.14 (1998)(quoting *Anderson v. Celebrezze,* 460 U.S. 780, 785 n. 5 (1983)). The judgment affirmed in *Baker* addressed a Minnesota marriage statute which did not indicate on its face whether same-sex couples could marry and which was not enacted for the express purpose of excluding same-sex couples from marriage. *Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971). Thus, *Baker* did not address the constitutionality of

intentionally discriminatory measures, like those at issue here. Additionally, *Baker* did not—and could not—address the issue regarding the recognition of marriages entered into in another state because at that time no jurisdiction in the world permitted same-sex marriage.

Courts need not "adhere to the view that if the Court has branded a question as unsubstantial, it remains so . . . when doctrinal developments indicate otherwise." *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975)(internal quotations omitted). *Baker* was decided more than forty (40) years ago. At that time, the Supreme Court had not yet held that laws enacted for the express purpose of disadvantaging a particular group violate the requirement of equal protection. *See United States Dep't of Agric. v. Moreno,* 413 U.S. 528, 534–35 (1973). And the Court had not yet applied the principles of equal protection to laws that target gay people. *Romer*, 517 U.S. at 635; *see also Windsor*, 133 S. Ct. at 2693. Just last year, during oral argument in *Hollingsworth v. Perry*, 133 S. Ct. 2652, Justice Ginsburg stated that "*Baker v. Nelson* was 1971. The Supreme Court hadn't even decided that gender-based classifications get any kind of heightened scrutiny. . . . I don't think we can extract much in *Baker v. Nelson*." Transcript of Oral Argument at 12. *Baker* did not even address due process. The Court in 1971 had not yet held that same-sex couples have the same protected liberty interests in their relationships as others. *Lawrence*, 539 U.S. at 578. Nor had the Supreme Court affirmed that "the right to marry is of fundamental importance for all individuals." *Zablocki*, 434 U.S. at 384.

It is not surprising that the opinions in *Hollingsworth* and *Windsor* do not mention *Baker*. *See Hollingsworth*, 133 S.Ct. 2652; *Windsor*, 133 S. Ct. 2675. "Not even the dissenters in *Windsor* suggested that *Baker* was an obstacle to lower court consideration challenges to bans on same-sex marriage." *Wolf*, 2014 WL 2558444, at *5. In light of the substantial doctrinal developments, every federal court to consider whether *Baker* controls a challenge to a state law

barring same-sex couples from marriage post-*Windsor* has concluded that the answer is no. *See*, *Kitchen*, 2014 WL 2868044, at *1; *Wolf*, 2014 WL 2558444, at *3–6; *Geiger*, 2014 WL 2054264, at *1 n. 1; *Whitewood*, 2014 WL 2058105, at *4–6; *Latta*, 2014 WL 1909999, at *7–9; *DeBoer*, 973 F. Supp. 2d at 773 n. 6; *De Leon*, 975 F. Supp. 2d at 946–49; *Bostic*, 970 F. Supp. 2d at 469–70; *Bourke*, 2014 WL 556729 at *1; *Bishop*, 962 F. Supp. 2d at 1275–77.

### B.      *Citizens for Equal Protection, Inc. v. Bruning*

The Court should not follow the Eighth Circuit's decision in *Citizens for Equal Protection, Inc. v. Bruning*, 455 F.3d 859 (2006), where the Eighth Circuit concluded that the Constitution required "restraint" in this instance and held that Nebraska's state constitutional marriage bans did not violate the Equal Protection Clause or the First Amendment. *Id.* at 871. At a minimum, *Bruning* does not apply to Plaintiffs' due process arguments. *Bruning* is not controlling as to Plaintiffs' Equal Protection Clause arguments either, however, because the Supreme Court now applies a stricter standard of review to classifications based on sexual orientation than the rational basis review applied in *Bruning*.

*Bruning* did not address whether same-sex marriage bans violate the Due Process Clause. The *Bruning* court considered only whether Nebraska's marriage bans violated the Equal Protection Clause and the First Amendment. Thus, at a very minimum, *Bruning* is not controlling law for Plaintiff's Due Process Clause claims. The Supreme Court's decided *Windsor* under both the Due Process Clause and the Equal Protection Clause. *See Windsor*, 133 S. Ct. 2675. The vast majority of the cases since *Windsor* have rested on due process grounds as well. *See Kitchen*, 2014 WL 2868044 (Tenth Circuit Court of Appeals held that the Due Process Clause provides a fundamental right to marry, which extends equally to same-sex couples); *see also*, *Gieger*, 2014 WL 2054264; *Evans*, 2014 WL 2048343; *Latta*, 2014 WL 1909999; *Baskin*, 983 F. Supp. 2d

1021; *Wolf*, 2014 WL 2558444; *Whitewood*, 2014 WL 2058105; *Henry*, 2014 WL 1418395;

*DeBoer*, 973 F. Supp. 2d 757; *Tanco*, 2014 WL 997525; *De Leon*, 975 F. Supp. 2d 632; *Bostic*,

970 F. Supp. 2d 456; *Bishop*, 962 F. Supp. 2d 1252; *Wymyslo*, 962 F. Supp. 2d 968; *Kasich*,

2013 WL 3814262. This Court should do the same.

As to the equal protection analysis, *Windsor* makes it clear that rational basis is no longer

the proper standard of review for laws based on sexual orientation. *See Wolf*, 2014 WL 2558444

("*Windsor* is not ratonal basis review."). The Supreme Court established a higher standard of

review for classifications based on sexual orientation in *Windsor*—"careful consideration"

review. The "careful consideration" review applied in *Windsor* is far from the deferential

approach given to laws under rational basis review. As the Ninth Circuit Court of Appeals

concluded in *SmithKline*,

> four factors [demonstrate] that *Windsor* applied heightened scrutiny: (1) the
> Supreme Court did not consider 'conceivable' justifications for the law not
> asserted by the defenders of the law; (2) the Court required the government to
> "justify" the discrimination; (3) the Court considered the harm that the law caused
> the disadvantaged group; and (4) the Court did not afford the law a presumption
> of validity.

*Wolf*, 2014 WL 2558444 (citing *SmithKline*, 740 F.3d at 981–83; *see also*, *Latta*, 2014 WL

1909999, at *17 ("If homosexuals are not a suspect or quasi-suspect class, the Supreme Court

would have applied rational basis in *Windsor*. But, as recognized in *SmithKline*, the Supreme

Court applied heightened scrutiny."). Because *Bruning* applied the incorrect standard of review

to Nebraska's discriminatory marriage laws, *Bruning* is no longer good law on this issue.

The Supreme Court has expressly rejected the asserted state interests relied upon in

*Bruning* to justify laws that discriminate against same-sex couples. *Bruning* cursorily concluded

that marriage bans must be valid because they have existed in the past and because only

opposite-sex couples can biologically procreate. *Id.* at 867–68. As the court noted in *Bourke*,

2014 WL 556729, "[t]his view was entirely consistent with the then-prevailing state and federal jurisprudence. A lot has changed since then." *Id.* at *1 (internal citations omitted). All courts to consider rationales once accepted in *Bruning*—upholding the traditional definition of marriage and promoting procreation—have concluded that such rationales are insufficient bases upon which to discriminate against same-sex couples. *See De Leon*, 975 F. Supp. 2d at 955 (citing *Lawrence*, 539 U.S. at 601 ("[p]reserving the traditional institution of marriage' is just a kinder way of describing the State's *moral disapproval* of same-sex couples.)); *Perry*, 671 F.3d at 1088 ("There is no rational reason to think that taking away the designation of 'marriage' from same-sex couples would advance the goal of encouraging California's opposite-sex couples to procreate more responsibly.") This Court should thus decline to follow *Bruning*'s outdated and overruled reasoning for upholding such discriminatory laws.

The Eighth Circuit noted in *Bruning* that, "to our knowledge no Justice of the Supreme Court has suggested that a state statute or constitutional provision codifying the traditional definition of marriage violates the Equal Protection Clause or any other provision of the United States Constitution." *Id.* at 870. This is no longer true. Since the Eighth Circuit decided *Bruning* in 2006, the Supreme Court has specifically held that a statute codifying the "traditional definition of marriage" violates both the Due Process Claus and the Equal Protection Clause. The Court should apply *Windsor* rather than *Bruning*.

## VI.   CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in favor of Plaintiffs and hold that Arkansas's Marriage Bans and Anti-Recognition Laws are unconstitutional in violation the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**Dated: July 17, 2014**                          Respectfully submitted,

                                                  WAGONER LAW FIRM, P.A.


                                    By:      /s/ Angela Mann_____
                                          Jack Wagoner III, A.B.A. # 89096
                                          Angela Mann, A.B.A. # 2011225
                                          Wagoner Law Firm, P.A.
                                          1320 Brookwood, Suites D & E
                                          Little Rock, AR 72202
                                          Phone: (501) 663-5225
                                          Fax: (501) 660-4030
                                          Email: jack@wagonerlawfirm.com
                                          Email: angela@wagonerlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I, Angela Mann, do hereby certify that a true and correct copy of the foregoing document was served electronically by means of the Court's ECF/CM system on the following attorney of record:

David M. Fuqua
dfuqua@fc-lawyers.com

Nga Mahfouz
nga.mahfouz@arkansasag.gov

/s/ Angela Mann_____

33