**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**RITA and PAM JERNIGAN and
BECCA and TARA AUSTIN**                                              **PLAINTIFFS**

**v.**                             **Case No. 4:13-cv-00410 KGB**

**LARRY CRANE, in his official capacity as
Circuit and County Clerk for Pulaski County,
Arkansas, and his successors in interest;
LESLIE RUTLEDGE, in her official capacity
as Attorney General for the State of Arkansas,
and her successors in interest; LARRY WALTHER,
in his official capacity as Director of
the Arkansas Department of Finance and
Administration, and his successors in interest;
and GEORGE HOPKINS, in his official
capacity as Executive Director of the Arkansas
Teacher Retirement System, and his
successors in interest**                                              **DEFENDANTS**

<u>**ORDER**</u>

On November 25, 2014, this Court entered Judgment in favor of the plaintiffs, the Jernigans and the Austins, after finding that Amendment 83 of the Arkansas Constitution and Arkansas Code Annotated §§ 9-11-107, 9-11-109, and 9-11-208 restricted their fundamental right to marry in violation of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Dkt. No. 41). The Court issued injunctive relief but stayed its execution pending the final disposition of any appeal to the Eighth Circuit Court of Appeals.

Cheryl Maples, one of six lawyers who represented plaintiffs in this case, filed 17 days after the Court entered judgment a motion on behalf of "all plaintiffs" for attorney's fees and costs, pursuant to 42 U.S.C. §1988, Federal Rule of Civil Procedure 54(d)(2)(A) and A.C.A. §

16-123-107 (Dkt. No. 43).  She also filed a motion to extend time to file her motion for fees, recognizing that the time for filing a motion for fees had already passed (Dkt. No. 42).  On December 23, 2014, 28 days after judgment was entered, Jack Wagoner, on behalf of himself and two other attorneys in the Wagoner Law Firm, filed a pleading on behalf of "all plaintiffs," making clear that his firm did not join in Ms. Maples' fee request, and moving that this Court "enter an Order setting a time for filing of fee applications within thirty (30) days of the resolution of any unsuccessful appeal by the Defendants in this action" (Dkt. No. 49).

Defendants chose to appeal the Court's decision in this case, which the Eighth Circuit affirmed on August 11, 2015 (Dkt. Nos. 68, 69).  Three days later, Mr. Wagoner filed a motion to lift the stay of injunctive relief (Dkt. No. 70), which the Court granted (Dkt. No. 78).  On August 25, 2015, more than nine months after judgment was entered, Mr. Wagoner filed his own motion for attorney's fees and costs, this time on behalf of himself and four additional lawyers: Angela Mann, James Harrison Kemp, R. Keith Pike, and Sarah Cowan (Dkt. No. 71).  Mr. Wagoner's request included no fees for Ms. Maples, and his later filings indicate that their relationship has deteriorated (Dkt. Nos. 80, 81).

Ms. Maples and Mr. Wagoner's requests for attorney's fees are separate, and not competing, claims (Dkt. No. 76, at 2).  They request a total of $66,165.47 in fees and costs, with Ms. Maples requesting $16,411.47 (Dkt. No. 43, at 1) and Mr. Wagoner, Ms. Mann, Mr. Kemp, Mr. Pike, and Ms. Cowan requesting a total of $49,754.00 (Dkt. No. 71, at 22).

Separate defendants Larry Crane and the State have responded to Ms. Maples and Mr. Wagoner's motions.  They assert a variety of arguments, including that both motions should be completely denied because they were not timely filed (Dkt. Nos. 44, 45, 47, 73, 74).

Ms. Maples has filed a motion to strike Mr. Wagoner's reply to the State's response to his motion for fees (Dkt. No. 81). Mr. Wagoner has responded (Dkt. No. 82). The Court denies her motion. *See* 5C Charles Alan Wright & Arthur R. Miller Fed. Prac. & Proc. Civ. § 1382 (3d ed.) ("[T]here are several limitations on the court's willingness to strike scandalous allegations. For example, it is not enough that the matter offends the sensibilities of the objecting party or the person who is the subject of the statements in the pleading, if the challenged allegations describe acts or events that are relevant to the action.").

For the following reasons, the Court will not completely deny the requests for attorney's fees. However, the Court will reduce the award of fees to $1,590.00 for Ms. Maples and $18,360.00 for Mr. Wagoner and the other members of his firm.

## I.       Timeliness

As a preliminary matter, the Court will address the timeliness argument. Unless a statute or court order provides otherwise, a motion for attorney's fees must be filed no later than 14 days after the entry of judgment. *See* Fed. R. Civ. P. 54(d)(2)(B). This Court entered judgment on November 25, 2014 (Dkt. No. 41). Ms. Maples filed her motion for fees 17 days after judgment was entered (Dkt. No. 43). Mr. Wagoner, on behalf of himself and Ms. Mann, Mr. Kemp, Mr. Pike, and Ms. Cowan, filed his request more than nine months after judgment was entered (Dkt. No. 71). Neither argues that a statute or court order provided for a deadline longer than 14 days to file their motions seeking fees.

Ms. Maples argues that the Court should ignore the tardiness of her filing (Dkt. No. 42). She miscalculated the deadline for filing her motion but contends that, under the circumstances, the Court should grant her motion for an extension of time pursuant to Federal Rule of Civil Procedure 6(b)(2). Mr. Wagoner argues that the fee requests were timely filed because the

"Court's [s]tay of the Judgement [t]olled the [t]ime for [f]iling an Attorneys' Fee Motion" (Dkt. No. 80, at 2).  He also argues that, even if his fee request was not timely filed, the Court should find that the delay was the result of excusable neglect (Dkt. No. 80, at 4).

The Court rejects Mr. Wagoner's contention that "the law is unclear as to the date on which the fourteen day period under Rule 54(d) begins in a case where a judgment is stayed by the trial court."  Rule 54(d)(B) states that a motion for fees must be filed no later than 14 days after the entry of judgment.  The same rule defines judgment as including "a decree and *any order from which an appeal lies*."  By its own plain language, Rule 54 makes clear that the motion for fees must be filed within 14 days after the entry of judgment, regardless of whether the judgment will be appealed.  Here, the State filed a notice of appeal after this Court entered its Order and Judgment (Dkt. No. 46).

The Court is not persuaded by Mr. Wagoner's citation to *Patterson v. Mutual of Omaha Insurance Company*, No. 8:10CV26, 2014 WL 6901065 (D. Neb. Dec. 4, 2014) (Dkt. No. 80, at 2).  In *Patterson*, the court found that the plaintiff's motion for attorney's fees was timely despite the fact that it was filed over 17 months after the court entered judgment in the case.  However, the circumstances of this case are distinct from *Patterson*.

In *Patterson*, the court noted that it had granted a number of joint or unopposed motions staying proceedings or the enforcement of judgment both immediately before and after entering judgment.  *Id.* at *4.  Notably, a magistrate judge granted a joint motion to stay all deadlines four days before the district court granted summary judgment in favor of the plaintiff.  *See* Text Order Granting Joint Motion to Stay All Deadlines, *Patterson v. Mutual of Omaha Insurance Company*, No. 8:10-CV-26, 2014 WL 6901065 (D. Neb. Dec. 4, 2014), ECF No. 82.  The question presented to the court was "what effect, if any, these motions and orders had on the time

restraints imposed by Fed.R.Civ.P. 54(d)(2)(B) . . . and whether the defendant's appeal (Filing No. 88) had any effect on the timing of the plaintiff's motion for attorney fees." *Id.* The district court concluded that "it would be illogical to hold that the period imposed by Fed.R.Civ.P. 54(d)(2)(B)(i) began to run immediately after this court granted plaintiff's motion for summary judgment, because of the language in the parties' joint motion to stay *all deadlines*." *Id.* at 4 (emphasis added).

The circumstances of this case are different. Unlike the court in *Patterson*, this Court did not entertain motions extending deadlines or staying judgments in the days surrounding its entry of judgment. In fact, the Court stayed execution of the injunction based on the Supreme Court's issuance of a stay in *Herbert v. Kitchen*, 134 S. Ct. 893 (2014), not on the request of any party. The confusion about deadlines in *Patterson* is absent. Therefore, the Court finds that Mr. Wagoner's motion for attorney's fees was not timely filed.

However, the Court agrees with Ms. Maples and Mr. Wagoner that their tardiness is excusable. The Eighth Circuit has defined excusable neglect as "good faith and some reasonable basis for noncompliance with the rules." *Ivy v. Kimbrough*, 115 F.3d 550, 552 (8th Cir. 1997). It is "an 'elastic concept' that empowers courts to accept, 'where appropriate, . . . late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 392, 388 (1993)). "The determination of whether neglect is excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Cook v. Triple Transp., Inc.*, 928 F. Supp. 2d 1061, 1064 (E.D. Ark. 2013) (quoting *Kurka v. Iowa Cnty.*, 628 F.3d 953, 959 (8th Cir.2010)). There are four "particularly important" factors in determining whether neglect is

excusable: "(1) the possibility of prejudice to the defendant, (2) the length of the delay and the potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the party's reasonable control, and (4) whether the party acted in good faith." *Kurka v. Iowa Cnty., Iowa*, 628 F.3d 953, 959 (8th Cir. 2010).

Applying the *Kurka* factors to this case, the Court finds that both Ms. Maples and Mr. Wagoner's neglect was excusable. Mr. Crane and the State were not prejudiced by the delay. Neither asserts prejudice in their pleadings, and both have responded in full to the merits of the fee requests. *See Hanjy v. Arvest Bank*, No. 4:14-CV-00006-KGB, 2015 WL 1456186, at *3 (E.D. Ark. Mar. 31, 2015).

The length of the delay weighs in favor of a finding of excusable neglect as well, particularly for Ms. Maples. *See Cook*, 928 F. Supp. 2d at 1064 ("The delay was three days."). While Mr. Wagoner filed his motion much later, it was still filed within two weeks of the entry of judgment by the Eighth Circuit in this case. Under the circumstances, the delay was not extreme. Both Ms. Maples and Mr. Wagoner have explained the reasons for their delay, and there is no indication of bad faith. *See Gaither v. Arkansas Found. for Med. Care*, No. 4:11-CV-576-KGB, 2013 WL 680688, at *5-6 (E.D. Ark. Feb. 25, 2013). Therefore, the Court will grant the motions for extensions of time (Dkt. Nos. 42, 49) and consider the motions requesting fees.

## II.     Entitlement to Fees Generally

Ms. Maples and Mr. Wagoner request attorney's fees pursuant to 42 U.S.C. § 1988, which "allows 'the prevailing party' in certain civil rights actions, including suits brought under § 1983, to recover 'a reasonable attorney's fee.'" *Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012).[1]

---

[1] Ms. Maples also requests fees pursuant to Ark. Code. Ann § 16-123-107. The Court does not analyze this request separately, as this provision may not apply to the circumstances of this case and the analysis of the fee request would be the same, even if the provision applies.

Section 1988 provides that the question of whether to award attorney's fees is within the district court's discretion. However, the Supreme Court has made clear that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

The Court finds that plaintiffs were the prevailing party in this action. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). The Court's judgment enjoined the defendants from taking actions denying plaintiffs the right to marry. While the appeal of the Court's judgment in this case was pending, the Supreme Court issued its decision in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). The Eighth Circuit held that *Obergefell* did not render this Court's judgment moot, and the Eighth Circuit affirmed the judgment. *Jernigan v. Crane*, 796 F.3d 976, 979-80 (8th Cir. 2015). Therefore, the plaintiffs qualify as a prevailing party.

As a prevailing party in a § 1983 action, plaintiffs are entitled to attorney's fees unless "special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429. Mr. Crane and the State present two potential "special circumstances" that they argue render any award to the plaintiffs unjust.

Mr. Crane argues that Ms. Maples' request should be completely denied because it is not supported by sufficient evidence (Dkt. No. 47, at 6). Mr. Crane cites to *MacDissi v. Valmont Indus., Inc.*, where the Eighth Circuit noted that "district courts may reduce or eliminate attorneys' fees awards where the absence of such records leaves the court without a reliable basis on which to award fees." 856 F.2d 1054, 1061 (8th Cir. 1988). The Court notes that *MacDissi* does not provide any examples of decisions where a district court has completely denied an

otherwise meritorious attorney fee award on this basis; in *MacDissi* itself, the Eighth Circuit *upheld* the district court's decision to award attorney's fees despite the fact that counsel "submitted reconstructed, rather than contemporaneous, records."  *Id.*  The Court denies Mr. Crane's motion to deny completely Ms. Maples' request for fees on this basis.

The State argues that the fee requests should be denied because plaintiffs' counsel has been paid by an outside group for their work in this matter, and plaintiffs would suffer no financial hardship if additional fees are denied (Dkt. No. 74, at 7-8).   In his motion for attorney's fees, Mr. Wagoner[2] informed the Court that the Arkansas Public Law Center ("APLC"), a "non-profit, non-partisan, tax exempt advocacy organization founded in 2010 and dedicated to public justice and civil rights in Arkansas," paid his law firm $30,024.87 during the District Court portion of this case, which constituted "all out of pocket expenses in connection [to] the litigation and compensated WLF attorneys at the reduced hourly rate of $100 per hour" (Dkt. No. 71, at 1-2).   Mr. Wagoner requests that, as a matter of equity and fairness, this Court award a total attorney's fee award of $49,754.00:  $30,024.87 of which would be used to reimburse the APLC, and the remaining $19,729.13 of which would pay his law firm, representing the difference between what his law firm has already been paid and what the lawyers of his firm claim they would have otherwise been paid at their normal hourly rates.

The parties do not cite to any Eighth Circuit cases addressing whether a third party's financing of the plaintiffs' suit would constitute a "special circumstance" rendering an award of attorney's fees unjust.   The Court is aware of a single case in the Eighth Circuit where a district court rejected an argument similar to the State's in a footnote.  *Dorr v. Weber*, 741 F. Supp. 2d 1022, 1028 n.2 (N.D. Iowa 2010).  The Tenth Circuit has found that this circumstance does not

---

[2]  It is unclear on the record before the Court whether the APLC paid any of Ms. Maples' costs or fees.

provide sufficient grounds for denying all attorney's fees requested. *Am. Council of the Blind of Colorado, Inc. v. Romer*, 962 F.2d 1501, 1504 (10th Cir. 1992), *vacated and remanded on other grounds*, 506 U.S. 1075 (1993). Presented with a similar question, the Eighth Circuit determined that the ACLU should not be denied attorney's fees despite the fact that it "conducted a specific fund-raising campaign to cover the costs of the action on the merits." *McLean v. Arkansas Bd. of Educ.*, 723 F.2d 45, 47 (8th Cir. 1983). For these reasons, the Court does not find that the APLC's involvement in this case constitutes a "special circumstance" permitting the Court to deny completely plaintiffs' motions for attorney's fees.[3] However, the fee charged by Mr. Wagoner's law firm to the APLC is relevant to the question of calculating reasonable attorney's fees, as addressed later in this Order. *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000); *Billings v. Winder Police Dep't*, No. 2:10-CV-64-RWS, 2011 WL 2618928 (N.D. Ga. July 1, 2011).

### III.  Calculating the Award

As the plaintiffs were the prevailing parties, and no special circumstances exist that would render any award unjust, this Court is required to award a reasonable fee pursuant to 42 U.S.C. § 1988. *Hensley*, 461 U.S. at 429. Section 1988 does not define what constitutes a reasonable fee, but courts have found that "[t]he 'most useful starting point' for determining a reasonable attorney's fee is the lodestar, which is the product of a reasonable hourly rate and the number of hours reasonably expended on the matter." *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014).

---

[3] The Court notes that, if the Wagoner Law Firm shares any attorney's fees awarded by this Court with the APLC, it implicates Rule 5.4 of the Arkansas Rules of Professional Conduct. A lawyer is only allowed to share court appointed legal fees with a non-profit organization if that organization "employed, retained or recommended employment" of the lawyer in the matter. ALPCs connection with this matter is unclear from the filings. Therefore, the Court does not address this issue in this Order.

Both Ms. Maples and Mr. Wagoner suggest a lodestar amount in their fee requests. Ms. Maples claims that her reasonable hourly rate is $250.00 an hour and provides documentation indicating that she spent 63.60 hours working on this case (Dkt. No. 43, at 5, 9-10). She claims a total lodestar amount of $15,900.00 in fees. She claims an additional $511.47 in costs, which covers 1347 copies at $.25 a page and 312 miles in travel costs at $.56 a mile.

Mr. Wagoner filed his motion for fees on behalf of himself and four other lawyers. They claim reasonable hourly rates ranging from $150.00 to $275.00 and maintain that they worked a total of 276.8 hours on this case. They claim a total lodestar amount of $49,754.00, apparently including both fees and expenses (Dkt. No. 71, at 5-22).

### A.     Reasonable Hourly Rate

The State contests the reasonableness of Ms. Maples (Dkt. No. 47, at 2) and the attorneys at the Wagoner Law Firm's (Dkt. No. 74, at 4-5) hourly rates. As the State notes, the fee applicant has the burden "to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (emphasis added); *see also Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003) ("The onus is on the party seeking the award to provide evidence of the hours worked and the rate claimed."). Ms. Maples produced no evidence that her requested rate was in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. Instead, she simply stated that she has "used the market rate of $250.00 for Attorney Cheryl K. Maples" (Dkt. No. 43, at 5).

Mr. Wagoner, Ms. Mann, Mr. Kemp, Mr. Pike, and Ms. Cowan also fail to produce satisfactory evidence to support their requested hourly rates.  The only evidence offered on their behalf is an affidavit from Mr. Wagoner himself, which he included in his reply to the State (Dkt. No. 80, at 16-20).  In it, he states that he has practiced law in Arkansas for approximately 26 years, has never been subject to a disciplinary violation, has an "AV" rating in the Martindale-Hubbell Law Directory, and has been named in the publication "Best Lawyers in America" in the category of Family Law for the last 12 years.  He also states that his hourly billing rate for several years has been $295.00 an hour, which is "consistent with the market rate for similar services in Central Arkansas performed by a lawyer of reasonably comparable skill, experience, and reputation" (Dkt. No. 80, at 16).

On behalf of Ms. Mann, he states that she has worked for his firm for approximately four years, has been a practicing attorney since 2011, graduated in the top 5% of her class at the University of Memphis School of Law, and her customary billing rate with his firm has been $175.00 for at least two years.  According to Mr. Wagoner's affidavit, outside of this case, Ms. Mann normally writes briefs in complicated national class action cases in the Federal Courts in California, Florida, and New York.

For Ms. Cowan, Mr. Pike, and Mr. Kemp, Mr. Wagoner simply states in his affidavit that they are asking for the same rates they normally bill to other clients of the Wagoner Law Firm. The majority of the Wagoner Law Firm's practice is family law (Dkt. No. 80, at 17).  Mr. Wagoner claims that these rates are consistent with the market rate for similar services in Central Arkansas performed by lawyers with reasonable comparable skill, experience, and reputation. He does not provide any information about the skill, experience, and reputation of Ms. Cowan, Mr. Pike, and Mr. Kemp.

The Court finds that plaintiffs' counsel failed to produce satisfactory evidence that their requested rates are reasonable for the purposes of this analysis.  Failure to meet this evidentiary burden does not doom a fee application.  *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005).  However, the Court is under no obligation to take plaintiffs' counsel at their word and find that their rates are reasonable.

Ms. Maples and Mr. Wagoner's claims do not provide sufficient guidance to the Court regarding what a reasonably hourly rate is for the type of work performed in this case.  Ms. Maples provides no information about her skill or experience, does not inform the Court about her areas of expertise, and provides nothing about what she normally charges clients.  Mr. Wagoner's affidavit is not much better.  While he does provide information about himself and Ms. Mann, he does nothing of the sort for Mr. Kemp, Mr. Pike, and Ms. Cowan.  Furthermore, the information about all five lawyers' normal billing rates is of little benefit to this Court:  by Mr. Wagoner's own admission, the law firm primarily specializes in family law, and Ms. Mann normally drafts briefs in complicated national class actions.  This was a civil rights case.  There is no indication in the record before the Court that the normal rates for family law and class action practice are similar to the normal rates for civil rights work.  *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (reducing hourly rate for civil rights case because that type of case merits lower rate than what counsel normally charged in his normal practice).

Fortunately, there is a guidepost for determining what a reasonable rate is for plaintiffs' counsel in this case.  As the Supreme Court has noted, a lawyer's rate for a case is normally determined through negotiations with a client.  *Blum*, 465 U.S. at 896 n.11.  In the context of § 1988, that common process is usually unavailable, as "there is no negotiation or even discussion with the prevailing client, as the fee—found to be reasonable by the court—is paid by the losing

party." *Id.*  However, in this case, there *was* a negotiation between the prevailing client (or at least a surrogate) and counsel:  the APLC and the Wagoner Law Firm agreed on a rate of $100.00 an hour.

What a lawyer charges their client is perhaps the best evidence of their market rate. *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000).  The Court is aware of a single case addressing what the market rate should be for the purposes of a fee award pursuant to § 1988 when counsel for the prevailing party was paid by their client but requested a higher rate. *See Billings v. Winder Police Dep't*, No. 2:10-CV-64-RWS, 2011 WL 2618928 (N.D. Ga. July 1, 2011).  In that case, the court rejected the request for a higher rate and awarded what was actually negotiated between client and counsel.  The Court finds this approach persuasive under the circumstances presented here.  Therefore, the Court sets the market rate for Mr. Wagoner, Ms. Mann, Mr. Kemp, Mr. Pike, and Ms. Cowan at $100.00 an hour, which is the rate agreed to by their firm and the APLC (Dkt. No. 71, at 2).

Ms. Maples was not lead counsel in this matter.  While it is unclear if the APLC paid Ms. Maples for her work in this action, it would be inequitable on this record to award Ms. Maples a rate any higher than lead counsel in this case.  Accordingly, the Court finds that the reasonable hourly rate for Ms. Maples is $100.00 an hour.

### B.    Number Of Hours Reasonably Expended On This Matter

Mr. Crane and the State also contest the reasonableness of the number of hours that Ms. Maples and Mr. Wagoner claim to have worked on this case.  Specifically, they argue that the fee requests are not supported by sufficient evidence (Dkt. No. 47, at 2-3; No. 73, at 4-5); that the work allegedly performed was redundant, excessive, and unnecessary (Dkt. No. 47, at 3-6; No. 73, at 4-5; No. 74, at 8-12); that plaintiffs should not be paid for work on unsuccessful claims

(Dkt. No. 73, at 3; No. 74, at 9-10); and that plaintiffs should not be paid for work on amending their complaint (Dkt. No. 74, at 10).

    **1.  Plaintiffs should not be paid for work on unsuccessful claims**

   The Court finds that it would be inappropriate in this case to reduce the fee request because plaintiffs did not succeed on every claim.  In cases where a plaintiff succeeds on some, but not all, of his or her claims, the "dispositive consideration . . . is whether the issues upon which plaintiff's counsel spent time are interrelated to the central issues of the case." *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 806 (8th Cir. 1993).  "If any issues on which the plaintiff lost are unrelated to those on which he won, the unrelated issues must be treated as if they were separate cases and no fees can be awarded.  If, however, the claims on which the plaintiff lost are related to those on which he won, the court may award a reasonable fee." *Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 716 (8th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  This approach is logical:  in a lawsuit that "includes several related legal theories based on a common core of facts . . . counsel's time is devoted to the litigation as a whole, rather than on specific theories of relief, and compensation should be based on all hours reasonably expended to achieve a successful result." *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991).

   In this case, plaintiffs challenged the constitutionality of Amendment 83 to the Arkansas Constitution and Arkansas Code Annotated §§ 9-11-107, 9-11-109, and 9-11-208, and plaintiffs requested declaratory and injunctive relief.  While some of their claims were unsuccessful, they were all related to the "central issue" of their case.  Plaintiffs prevailed.  Therefore, under the circumstances presented in this case, the Court will not reduce an award of fees simply because it rejected or declined to reach some of plaintiffs' arguments.

**2.     Plaintiffs award should be reduced because work allegedly performed was redundant, excessive, and unnecessary and was not supported by sufficient proof**

Mr. Crane and the State argue that the fee award should be reduced to eliminate excessive hours spent on this case, providing specific examples of what they consider to be unnecessary work. Both also argue that the Court should further reduce the fee award because Ms. Maples and Mr. Wagoner failed to support their requests with sufficient proof.

The importance of billing judgment is not limited to the private sector, and "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (emphasis in original). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* If counsel fails to exclude such hours, the district court has a responsibility to do it for them. *Id.*; *Keslar v. Bartu*, 201 F.3d 1016, 1018 (8th Cir. 2000). The district court may also reduce an award if the documentation of hours is inadequate, meaning it prevents the court from being able to determine whether the hours are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 433; *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1189 (N.D. Iowa 2003) *aff'd*, 382 F.3d 816 (8th Cir. 2004) ("Reductions may be made, however, for such things as . . . poor record-keeping.").

After reviewing the fee requests and arguments from counsel, the Court agrees with Mr. Crane and the State that the fee requests submitted by Ms. Maples and Mr. Wagoner should be reduced because some of their work was redundant, excessive, and unnecessary, or is otherwise not supported by sufficient proof submitted to the Court with the fee requests. The Court will provide examples of excessive hours included in both requests. The Eighth Circuit does not

require a district court to "expressly identify all of the hours that it deem[s] to be excessive" in its opinion. *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 576 (8th Cir. 2014). The Eighth Circuit simply requires district courts to perform the lodestar calculation, which this Court has.

Ms. Maples is seeking to recover for 63.60 hours that she claims she worked on this case (Dkt. No. 43, at 10). The State argues, and the Court agrees, that her request is excessive in light of the fact that she was not lead counsel in this matter and filed her notice of appearance "over a year after Plaintiffs commenced this lawsuit, six months after the State filed its Motion to Dismiss, and after Plaintiffs had already moved for Summary Judgment" (Dkt. No. 47, at 4).

The only pleadings Ms. Maples filed with this Court were her notice of appearance, her motion for attorney's fees, and her motion for an extension of time to file the fee motion. Her time entries do not indicate that she spent any time assisting in the drafting of any substantive filings at all. Despite this fact, she claims that she is entitled to fees for 34.85 hours of legal research (Dkt. No. 43, at 9-10). She provides no explanation for why such voluminous research was necessary, other than that her "approach to the practice of law is grounded in extensive research" and that a "huge expenditure of time on research may result in a similar expenditure of time saved in other areas of the same litigation" (Dkt. No. 76, at 5-6). This is not a sufficient explanation for why her research in *this* case contributed to the plaintiffs' success, considering she drafted no arguments on their behalf. Moreover, of the 34.85 hours of legal research, 16.75 hours are labeled as simply "research" or "research and review." This type of record keeping only further justifies a reduction of hours in the lodestar calculation.

Ms. Maples also requests fees for 19.5 hours of hearing preparation,[4] travel to the hearing, and participation at the hearing (Dkt. No. 43, at 10). By her own admission, some of the hearing preparations were a "waste of valuable time" (Dkt. No. 81, at 5). Still, she seeks to be compensated for those hours based on the Court's review of her filings (Dkt. No. 43, at 10). Ms. Maples' participation in the hearing was minimal. Mr. Wagoner, as lead counsel in this case, made the vast majority of plaintiffs' arguments at the hearing. Although Ms. Maples made a short statement at the hearing, she cited almost no law and, instead, relied primarily on personal experience and emotional appeal. Based on this, the Court views the amount of hours claimed as excessive, unnecessary work to an extent that mandates reduction of the fee award. *Rosen v. Wentworth*, 13 F. Supp. 3d 944, 952 (D. Minn. 2014).

These two examples alone constitute almost 86% of the hours for which Ms. Maples requests compensation. The Court finds that a significant reduction in hours for the purposes of calculating the lodestar amount for Ms. Maples is necessary to effect the purpose of § 1988 and to provide appropriate compensation for Ms. Maples' work. Mr. Crane and the State do not suggest a specific reduction.

The Court chooses to reduce Ms. Maples number of reasonable hours by 75%. While this is a major reduction, the Court finds it supported by the record before it. In determining this figure, the Court also considers to some extent the allegations[5] raised by Mr. Wagoner against

---

[4]   The Court included the entry of three hours on November 19, 2014, that is labeled "Meeting with JW (w/travel)(divided)" (Dkt. No. 43, at 10). Ms. Maples and Mr. Wagoner's other filings make clear that this meeting constituted hearing preparations (Dkt. No. 80, at 4; No. 81, at 5).

[5]   The Eighth Circuit has stated that "[u]nfounded allegations about an attorney plainly cannot serve as a basis for denying attorneys' fees under section 1988." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). However, the allegations against Ms. Maples were made by her own co-counsel, not opposing counsel or the Court itself. Furthermore, Mr. Wagoner's

Ms. Maples (Dkt. No. 80, at 18-20).   The Court understands that relationships, even among co-counsel, sour from time to time.   Therefore, although the Court considers the allegations, it affords more weight to the record before it, its understanding of Ms. Maples' contributions to this case, and the materials she submitted in support of her fee request.

In addition to her fee request, Ms. Maples claims $511.47 in costs for copies and travel (Dkt. No 43, at 6).   The State argues that she failed to support the necessity of these copies, particularly given her limited role in this matter, and failed to identify the destination and purposes of the trips (Dkt. No. 47, at 5).   To recover copying costs, a prevailing party must show that they were reasonable and necessary for effective and competent representation.   Ms. Maples fails to make any attempt to show that these costs were reasonable and necessary, making it impossible for the Court to make an informed determination.   *Robins v. Scholastic Book Fairs*, 928 F. Supp. 1027, 1035 (D. Or. 1996) *aff'd sub nom. Robins v. Scholastic Book Fairs, Inc.*, 116 F.3d 485 (9th Cir. 1997).   Similarly, travel costs may be reimbursable, "subject to a showing that these types of costs are 'normally billed to a private client in the local area.'"   *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1130 (D. Colo. 2008) (quoting *Bee v. Greaves,* 910 F.2d 686, 690 (10th Cir.1990).   Ms. Maples provided no such information.   For these reasons, the Court denies her request for costs.

Mr. Wagoner requests compensation for himself and four other lawyers in his law firm. This request is in addition to, and does not include, Ms. Maples, meaning six attorneys are requesting compensation in this case.

In his motion, Mr. Wagoner requests compensation for a total of 306 hours:  29.2 hours for himself, 160 hours for Ms. Mann, 71.5 hours for Ms. Cowan, 10.5 hours for Mr. Pike, and 5.6

---

allegations were made under oath.   Therefore, the Court believes it is proper to consider these allegations to some extent in making its fee determination.

hours for Mr. Kemp (Dkt. No. 71, at 5-22).   The State argues that "[a]ny fee award should be reduced further to account for and omit the broad swaths of unnecessarily duplicative work of the overstaffed Plaintiffs' attorneys in this case" (Dkt. No. 74, at 10).   While claiming that the "billing entries submitted by the attorneys lack the necessary detail to pinpoint all duplicative effort," the State identifies what it believes are "clear examples of unnecessary duplication of effort due to overstaffing" (Dkt. No. 74, at 10).   Those examples include email correspondence and conferences between the five lawyers within the firm about the matter, duplicated efforts in drafting pleadings, and unnecessary coordination in preparing for hearings.   The State believes that the duplication of effort resulting from five attorneys at the same law firm working on the same case justifies reduction of the fee award.

There is no *per se* rule against the use of multiple attorneys, but fee awards may be reduced if the case was "overlawyered." *Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1094 (E.D. Mo. 2011).   A case could be considered "overlawyered" if the lawyer or lawyers spent far more time on a task than would be appropriate. *See Rosen v. Wentworth*, 13 F. Supp. 3d 944, 952 (D. Minn. 2014) (reducing the fee award in part because the lawyers spent "14.1 work-hours preparing a 45–minute closing argument.").   In determining if a task was overlawyered, "[t]he trial judge should weigh the hours claimed against his [or her] own knowledge, experience, and expertise of the time required to complete similar activities." *Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1066 (8th Cir. 1989) (alteration in original); *see also Dorr v. Weber*, 741 F. Supp. 2d 1022, 1034 (N.D. Iowa 2010).   A district court may also reduce a fee award upon finding that services were unnecessarily duplicated by multiple lawyers. *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995).

Based on the materials submitted in support of the Wagoner Law Firm's fee request, the Court determines this case was overlawyered in certain respects. For example, between Mr. Wagoner, Ms. Mann, and Mr. Kemp, plaintiffs' counsel billed 50.5 hours to prepare for and attend the hearing on their motion for summary judgment (Dkt. No. 71, at 7-16). That figure does not include the additional 19.5 hours Ms. Maples billed for this preparation in her separate request. Mr. Wagoner spoke for just over an hour at this hearing; he gave prepared remarks. Ms. Mann and Mr. Kemp did not make any arguments. The Court, using its own knowledge, experience, and expertise, finds that the claimed hours are excessive for the service performed.

In addition to this specific example, the Court finds that a fee reduction is also justified by some ambiguity in the Wagoner Law Firm's billing records, which prevents the Court from making an informed determination as to whether the hours expended were in fact reasonable. *Tabech v. Gunter*, 869 F. Supp. 1446, 1460 (D. Neb. 1994). Individually, the records contain sufficient detail to award fees under § 1988. However, considering the number of lawyers collectively submitting fee requests in this case, it is difficult to determine "whether the services rendered by more than one counsel unnecessarily duplicated the work of other counsel." *Id.*

Finally, the Court notes that this is not the only case involving these facts and parties in which plaintiffs' counsel seeks fees. Both Mr. Crane (Dkt. No. 73, at 1-2) and the State (Dkt. No. 74, at 7) call attention to the fact that Mr. Wagoner and Ms. Maples filed a parallel suit in state court. Mr. Wagoner and the lawyers in his firm sought over $95,000.00 in fees for their work in the state case.[6]

Ms. Maples "redacted" a specific number of hours from her fee request for work that overlapped between the state and federal cases. Mr. Wagoner does not represent to this Court

---

[6] On October 14, 2015, Circuit Judge Chris Piazza awarded $60,000 in fees and $6,000 in costs, equally divided between the Wagoner Law Firm and Ms. Maples.

that he did so.  The Court recognizes that it is possible, if not likely, that a full award of the fees requested might result in a windfall for Mr. Wagoner and the lawyers in his firm, as they could be paid by both the federal and state courts for the same or similar work.  "[F]ee awards under § 1988 were never intended to 'produce windfalls to attorneys.'"  *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986)).  At best, Mr. Wagoner failed to inform the Court about how the work was divided or how he safeguarded against receiving a double recovery for his work through the fee petition he submitted to this Court.

For these reasons, the Court reduces the number of hours claimed in Mr. Wagoner's motion.  Courts have the discretion to reduce fees by a percentage, rather than by identifying the specific hours to be cut.  The Court chooses to reduce Mr. Wagoner's total number of hours by 40%, which the Court believes provides appropriate compensation for the work, while also eliminating excessive billing.

## IV.     Liability As Between Mr. Crane And The State

Mr. Crane asks the Court to deny entry of a fee award against him, as the "State, not Pulaski County, is the appropriate party to pay fees awarded" (Dkt. No. 45, at 3).  The State did not reply to Mr. Crane's request.

"Non-prevailing defendants are generally held jointly and severally liable for attorneys' fees and costs, regardless of an individual defendant's degree of culpability."  *Snider v. Peters*, 928 F. Supp. 2d 1113, 1118-19 (E.D. Mo. 2013) *aff'd sub nom. Snider v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014).  Mr. Crane argues that this case is an exception to the general rule, because "[p]laintiffs' claims are based entirely on the unconstitutionality of Arkansas's state constitution and statutes" and "[w]hen a state statute is ruled unconstitutional,

the state is the proper party to pay attorneys' fees under section 1988, not local enforcement officials" (Dkt. No. 45, at 4).

In his argument, Mr. Crane cites to *W. Virginians for Life, Inc. v. Smith*, 952 F. Supp. 342, 348 (S.D.W. Va. 1996). The rational of this case is persuasive and applicable to the issue presented to the Court. Therefore, the Court agrees with Mr. Crane that the State should pay the entirety of the fee awarded by this Court.

## V.  Conclusion

The Court finds that plaintiffs' counsel are entitled to attorneys' fees and costs as the prevailing party in this case. The Court has calculated and modified the lodestar amount for Ms. Maples and Mr. Wagoner's requests. The Court finds that Ms. Maples is entitled to a fee award of $1,590.00, which compensates her for 15.9 hours of work (25% of her requested 63.6 hours) at $100.00 an hour. The Court denies her request for costs due to insufficient documentation. The Court awards Mr. Wagoner, Ms. Mann, Mr. Kemp, Mr. Pike, and Ms. Cowan a combined $18,360.00, which compensates them for 183.6 hours of work (60% of their requested 306 hours) at $100.00 an hour. Both fee awards are solely against the State, not Mr. Crane. The Court denies all remaining motions.

It is so ordered on this 4th day of December, 2015.

Kristine G. Baker
United States District Judge